**SHARPLES SEPARATOR CO. v. DOMESTIC ELECTRIC REFRIGERATOR CORPORATION, to Use of HOLMES PRODUCTS, Inc.**

**No. 4789.**

Circuit Court of Appeals, Third Circuit.

Oct. 3, 1932.

Robert T. McCracken, of Philadelphia, Pa., Holding & Harvey, of West Chester, Pa., and Montgomery & McCracken, of Philadelphia, Pa., for appellant.

Walter Biddle Saul, John Kennedy Ewing, 3d, William E. Mikell, Jr., Roper & Caldwell, and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an action at law for rescission of a contract and restitution of money and property. The plaintiff, the Domestic Electric Refrigerator Corporation, avers that the defendant, the Sharples Separator Company, continually breached its contract to manufacture refrigerators by delivering defective and inferior machines to the plaintiff. We shall speak of the parties as they stood in the District Court. The defendant denies that it broke its contract and counterclaimed, averring that the plaintiff repudiated the contract. The case was tried to the District Court and a jury. The court submitted the case to the jury on the theory that, under the terms of the contract, the plaintiff could rescind the contract and demand the return of its property and money in the defendant's hands, and charged the jury that the only question for it to decide was which of the two parties breached the contract. The jury found for the plaintiff, and a judgment was entered on the verdict. The defendant appealed.

The defendant agreed to manufacture 6,000 electric refrigerators for the plaintiff. It was equipped to manufacture and had manufactured for many years cream separators which required skill and precision. It had to convert its plant to enable it to manufacture the refrigerators according to the design and specifications furnished it by the plaintiff, which was entirely responsible for the marketability and usefulness of the machines if they were properly manufactured. The plaintiff advanced the defendant money on the contract to purchase tools and for working expenses. The contract was modified several times as to quantity, prices, etc., but these modifications are of no concern here.

The defendant agreed to manufacture, sell, and deliver f. o. b. its plant the refrigerators in accordance with the specifications furnished by the plaintiff, which had the right to maintain, at its expense, inspectors in the defendant's plant. The contract provided that these inspectors, "shall make final acceptance of all plants shipped and the manufacturer's responsibility shall be confined to its guarantees under this agreement. If the Buyer waives the right to inspect any or all of said plants, then Buyer shall accept the inspection of the Manufacturer's inspectors in place thereof, said acceptance shall be as equally binding as that of the Buyer's inspectors." The manufacturer was not to be responsible for damage or any injury to the refrigerators after they left its premises "except as provided in article seventh of its guarantee," which is as follows: "32 Seventh. The Manufacturer guarantees that all Refrigerators and Parts thereof manufactured by it hereunder shall be of first class workmanship and material and shall be in accordance with the drawings and specifications furnished by the Buyer (and accepted by the Manufacturer) to the extent of replacing F. O. B. its works, West Chester, Pa., any mechanical parts which do not meet this guarantee and which are returned to the Manufacturer within one year from the date of their original shipment. All parts on which claim is made are to be returned to Manufacturer's Works without any expense to Manufacturer. The Manufacturer takes no responsibility for the quality or performance of the refrigerator or parts except as provided in this paragraph."

After the plaintiff had accepted and paid for 1,700 of the 6,000 units, it terminated the contract and brought this action on the theory that it had the right to rescind the unexecuted part of the contract and refuse to accept, or pay for, any machines to be manufactured thereafter, because the de-

fendant, it said, had continually produced in an unworkmanlike manner defective machines which did not conform to the specifications. It contends that the defendant thus breached the express warranty contained in "32—Seventh" of the contract, and that the restriction of liability therein for a breach of warranty did not prevent the plaintiff from rescinding the contract, but merely prevented the defendant from recovering damages for the breach. In this suit the plaintiff sought to have returned to it the money it advanced to the defendant and the property it purchased with the money.

The defendant, on the other hand, contends that under the terms of the contract there could be no breach except as to those refrigerators which did not meet its guaranty as to workmanship, material, and construction and as to those the contract provided a method of replacement which it always stood ready to perform.

The trial judge instructed the jury to find which of the parties was responsible for the breach of the contract. In submitting the case, the learned judge charged the jury that the plaintiff alone was responsible for the design and specifications of the refrigerators, and that the defendant was only obligated to manufacture the machines in a workmanlike manner according to the specifications and to replace defective parts within a year from the date of shipment, but he further charged that, notwithstanding the inspection and acceptance of the machines and the limited duty to replace defective parts, the jury might find that the defendant breached the contract if it failed to manufacture the refrigerators in a workmanlike manner and according to the specifications of the contract.

The defendant contends that the trial court's interpretation of the contract is erroneous, and argues that, under the terms of the contract and the evidence submitted by the plaintiff, it was not guilty of a breach of the contract. The question that we must decide is whether or not the trial court's theory of the case, as expressed to the jury, was correct, and, in order to do so, the contract as a whole and the circumstances surrounding its execution must be considered.

■ As a general principle, the parties to a contract to sell personal property may provide whatever terms they choose. They may exclude all ordinary rights or provide that the rights of the buyer for a breach of warranty shall be limited to a certain remedy, and, when they provide for an exclusive

remedy, the buyer must avail himself of it or go without redress. Sanford v. Brown Bros. Company, 208 N. Y. 90, 101 N. E. 797, 50 L. R. A. (N. S.) 778; Hill & MacMillian, Inc., v. Taylor, 304 Pa. 18, 155 A. 103, 75 A. L. R. 1022; Wasatch Orchard Company v. Morgan Canning Company, 32 Utah, 229, 89 P. 1009, 12 L. R. A. (N. S.) 540; Williston on Sales, § 611a. In recognition of the power of the parties to vary the usual obligations of a contract, the Pennsylvania Sales Act provides: "Where any right, duty, or liability would arise under a contract to sell or a sale, by implication of law, it may be negatived or varied by express agreement. * * * All implications from surrounding circumstances, or from the nature of a contract or agreement, shall be regarded as forming part of the contract or agreement." Act of May 19, 1915, P. L. 543, § 71, 69 PS § 332; Burntisland Shipbuilding Company v. Barde Steel Products Corporation (D. C.) 278 F. 552, 554.

■ The defendant had never manufactured electric refrigerators, and knew nothing of them. By the contract, it agreed that the machines should be of first-class workmanship and material and made in accordance with the drawings and specifications furnished by the plaintiff, which was alone responsible for the marketability and usefulness of the product. The defendant was merely obliged to follow the terms of the contract, and, if it did not do so, the contract provided the remedy, and this was exclusive.

The terms of the contract considered as a whole, and not fragmentarily, seem clear. Section 8, third article, is concerned chiefly with the consideration for the agreement, but it also provides generally that the defendant agreed to deliver, etc., at its plant, refrigerators manufactured, tested, and inspected in accordance with the plaintiff's specifications. Standing alone, it might possibly support the contention of the plaintiff, but, when read in connection with the following provisions in the same article, it does not do so:

"25. The Buyer shall have the right to maintain at its own expense an inspector, or inspectors, in the plant of the Manufacturer. Said inspector or inspectors shall make final acceptance of all plants shipped, and the Manufacturer's responsibility shall be confined to its guarantees under this agreement. If the Buyer waives the right to inspect any or all of said plants, then Buyer shall accept the inspection of the Manufac-

502

turer's inspectors in place thereof, said acceptance shall be equally binding as that of the Buyer's inspectors.

"26. Manufacturer shall not be responsible for damage, breakage, or any other cause after refrigerators leave Manufacturer's premises, except as provided in Article Seventh of its guarantee."

The express terms of the contract cannot be changed. As provided in the two sections above quoted, the defendant's responsibility for any cause after final acceptance of the refrigerators by the plaintiff's inspectors is confined to the provisions of the seventh article of the contract wherein the defendant guaranteed that the refrigerator and its parts shall be of "first class workmanship and material, and shall be in accordance with the drawings and specifications furnished" by the plaintiff "to the extent of replacing" any mechanical parts which do not meet the guaranty. Furthermore, that same paragraph provides that "the manufacturer takes no responsibility for the quality or performance of the refrigerators or parts except as provided in this paragraph."

The third article of the contract relates to and defines the rights and duties of the parties prior to the final acceptance of the finished machines by the plaintiff's inspectors. Sections 25 and 26 of the article make that certain. If the defendant had offered to the plaintiff for acceptance defective and improperly constructed machines, the plaintiff could have rightfully refused them, but it did not, and thereafter it was confined to its remedy of replacing any parts which did not meet the guaranty and were returned within one year.

The evidence in this case shows that 1,700 machines were apparently put to the rigid tests required by the contract and finally accepted by the plaintiff. Of course, there may have been latent defects in the machinery that did not appear until the refrigerators were in operation and use, and section 32, article seventh, by providing for the return of defective machinery for replacement within one year, was intended to take care of that situation. If the defendant had then refused to repair them, the plaintiff would be in a different position. But not one of the 1,700 machines was returned.

The plaintiff insists that section 32, seventh article, does not prevent rescission as to executory portions of the contract when the defendant had continually breached its warranty of quality and failed to follow the agreed designs and specifications, and that the restricted liability therein only refers to the remedy that plaintiff might pursue for the breach of the warranty, for which breach the plaintiff is making no attempt to recover in this action. In other words, the plaintiff argues that this paragraph does not exclude the right to rescind for a breach of the warranty, but only to limit the defendant's liability for damages.

But section 32, seventh article, is exclusive as well as imperative, and its simple and plain provisions do not justify such construction. It declares that the defendant only warrants the refrigerators and parts as to workmanship, quality, and construction, to the extent of replacing defective parts. This clause defines not only the remedy, but the rights of the parties, and the plaintiff cannot hold the defendant guilty of a breach of the contract until it brings it within the limitations of the warranty. This it has not done.

This construction of the contract is not only required by a plain and fair interpretation of the express language used, but is also in keeping with and is required by the surrounding circumstances. This was the defendant's first venture as a manufacturer of refrigerators. While it was equipped to make other kinds of machines whose construction required an equal amount of skill, it knew nothing of making electric refrigerators. The machine itself was of a new design and untried in the field. The defendant was simply to manufacture the machines according to the plaintiff's specifications. Prior to the delivery and acceptance of the 1,700 units, a large number of machines were built solely for experimental purposes. It was necessary for the plaintiff's design to undergo numerous changes, and, when the defendant began to make the refrigerators involved in this case, the plaintiff had found no fault with the defendant's products.

The time for the plaintiff to show the alleged failure to comply with its design was when the machines were undergoing the rigorous running test before its inspectors accepted them. The plaintiff suggested that these tests were interfered with and its inspectors deluded. That may or may not be true, but it is of no concern here. More than that, it is difficult to understand how the plaintiff could have accepted 1,700 ma-

chines after any sort of inspection without discovering alleged continuous defective construction and departures from specifications.

Under the terms of the contract, the limitation in the warranty of section 32, seventh, provided an exclusive remedy for the appellee, and none other is available.

Thus there is no necessity to consider the other questions relating to the right of rescission under the circumstances in this case.

The judgment is reversed.