**JOSEPH MARTINELLI & CO., Inc., v. L. GILLARDE CO.**

Civil Action No. 5800.

District Court, D. Massachusetts.

Aug. 27, 1947.

Emerson S. Searle and Silvio Martinelli, both of Springfield, Mass., for appellant.

Louis J. Deitz, of Springfield, Mass., for appellee.

HEALEY, District Judge.

The appellant, Joseph Martinelli & Company, Inc., brings this appeal in accordance with the Perishable Agricultural Commodities Act, 7 U.S.C.A. § 499a et seq., to set aside a reparation award order of the Secretary of Agriculture. The Act provides for a trial de novo which "shall proceed in all respects like other civil suits for damages, except that the findings of fact and order or orders of the Secretary shall be prima facie evidence of the facts therein stated." 7 U.S.C.A. § 499g(c).

The following findings of fact were made by the Secretary of Agriculture:

"1. The complainant, L. Gillarde, Company is a corporation whose post office address is 79 South Water Market, Chicago, Illinois.

"2. The respondent, Joseph Martinelli & Company, Inc., is a corporation whose post office address is 157 Lyman Street, Springfield, Massachusetts, and during all of the times mentioned in the complaint was licensed under the Perishable Agricultural Commodities Act of 1930, as amended.

"3. On or about June 21, 1943, the complainant sold the respondent in interstate commerce a carload, FGE 52764, of U. S. No. 1 Jo Jo Cantaloups containing 60 crates J–45s at $6.25 per crate, 225 crates J–36s at $5.75 per crate, 18 crates S–45s at $5.75 per crate and 12 crates ponies at $4.25 per crate, f. o. b. Yuma, Arizona, plus $20 precooling, for a total sum of $1,843.25 on a rolling acceptance final basis. These cantaloups were inspected at shipping point on June 20, 1943, the date of shipment, and graded U. S. No. 1.

"4. The car arrived in Springfield, Massachusetts, on July 3, 1943, at 3:00 p. m.; July 4 was a holiday and on the 5th of July the respondent wired the complainant that it was rejecting the shipment.

"5. An inspection by an agent of the United States Department of Agriculture on July 6, 1943, in Springfield, Massachusetts, showed many overripe and soft melons and that these cantaloups contained decay ranging from 35 percent in some samples to 100 percent in others, averaging approximately 85 percent, mostly Cladosporium Rot.

"6. The cantaloups were abandoned to the railroad company which sold the shipment to the United Fruit Company of Springfield, Massachusetts, for the sum of $300.

"7. The cantaloups did not move under normal transportation service and conditions, and a claim was filed against the Southern Pacific Railroad Company, on behalf of the complainant by Harry G. Wickman of the Wickman Traffic Service, 216 South Water Market, Chicago, Illinois, on August 31, 1943, for the sum of $1,759.50, being the invoice cost to complainant, which claim was settled on the basis of 50 percent of the invoice cost or $879.75 from which was deducted $175.95 collection costs. The balance of $703.80 was paid to the complainant.

"8. Respondent was not consulted in the making of the claim against the railroad nor did it take any affirmative action toward collecting from the railroad.

"9. Respondent has paid no part of the contract price to complainant.

"10. The informal complaint was filed on August 19, 1943, and within 9 months from the time the cause of action accrued."

On the basis of the above findings, it was determined that the appellant-respondent should pay to the appellee-complainant, "as reparation, the sum of $1,139.45 with interest thereon at 5 percent per annum from July 5, 1943, until paid."

The appellant's appeal is based on the following grounds:

"1. The order is against the evidence and the weight of the evidence in the case.

"2. The order is against the law in the case.

"3. The cantaloups which were shipped to the petitioner were not in fact of the U. S. No. 1 grade as called for by the contract.

"4. The respondent is estopped to claim damages from the petitioner by reason of the fact that the respondent made a claim for damages against the railroad for improper icing of the carload of cantaloups in question and settled the claim for much less than the amount thereof, all without any authority from the petitioner and all without the knowledge or assent of the petitioner."

At the hearing in this court, Louis A. Martinelli, president of the appellant corporation, testified as to the negotiations for the purchase, the condition of the cantaloups on arrival at Springfield, and his subsequent notice of rejection of the shipment by wire to the appellee. The only other witness for the appellant was an expert food chemist.

The appellee introduced in evidence the "Preliminary Statement, Findings of Fact, Conclusions, and Order of the Secretary of Agriculture, dated July 3, 1946, issued by the Judicial Officer," the deposition of one Harry G. Wickman, and 13 exhibits formerly introduced at the hearing before the Examiner for the Department of Agriculture. The appellee then rested.

Appellant contends that the statute of frauds is a complete defense to the action because there was not a sufficient memorandum of the oral contract signed by its representative. The pertinent part of the statute of frauds contained in the Uniform Sales Act is as follows:

"(1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or more shall not be enforceable by action * * * unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." Annotated Laws of Massachusetts, C. 106 § 6.

In my opinion, the telegram of June 22, 1943, signed Joseph Martinelli & Co. (appellee's exhibit 6), was under the circumstances a sufficient memorandum to satisfy the statute of frauds. Schmoll Fils & Co. Inc. v. Wheeler, 242 Mass. 464, 136 N.E. 164. Certainly that telegram incorporated by reference the terms of appellee's telegram of June 21, 1943, (appellee's exhibit 3). The acceptance, wired in appellee's reply telegram of June 22, 1943, (appellee's exhibit 7), would have been sufficient also to establish a written contract, if such were the intent of the parties.

Under the terms of the contract, title to the cantaloups in question, shipped "f. o. b., rolling acceptance final," passed to the appellant at the point of shipment. From that point also all risk of normal deterioration and damage in transit fell upon the appellant. However, the appellee remained liable for any inherent or latent defects which would render the cantaloups non-conformable to the expressed or implied warranties of the contract.

Based on the examination by the destination inspector of the United States Department of Agriculture, the Secretary of Agriculture has found that on arrival, the cantaloups "contained decay * * * averaging approximately 85 percent, mostly Cladosporium Rot." Cladosporium Rot was described by appellant's expert witness as a disease of field origin which is not apparent to the naked eye when melons are in a green

ripe or hard ripe stage, but which develops as the melons ripen, causing them to decay. The witness further testified that melons infected with the disease were not, in fact, U. S. No. 1 grade, even though an inspector of the United States Department of Agriculture, who did not discover its presence, so graded them. No finding of the Secretary of Agriculture and no testimony adduced at the trial, contradicted this statement.

■ It is evident, therefore, that at the point of shipment, before title to the cantaloups in question passed to the appellant, they were not in fact U. S. No. 1 grade melons, as required by the terms of the contract, but were inherently defective in that they were infected with this disease of field origin. They, therefore, did not meet the implied warranties of description and quality.

While it is true that under a contract of sale f.o.b., all subsequent risks of normal deterioration or damage in transit fall on the buyer, risk of latent or inherent defects in the goods falls on the seller. A. J. Conroy, Inc. v. Weyl-Zuckerman & Company, D.C., 39 F.Supp. 784, and cases cited therein; Agoos Kid Company, Inc. v. Blumenthal Import Corporation, 282 Mass. 1, 184 N.E. 279.

Since the cantaloups did not correspond to the implied warranties of quality and description at the time they were shipped to the appellant, the appellant was justified, under the Uniform Sales Act, in rejecting them.

■ It has been held that "the P.A.C.A. does not remove the applicability of the law of sales; it merely gives an additional remedy to growers, who were previously forced to resort to expensive trials in all cases in which dealers and commission men failed to live up to the provisions of their contracts." A. J. Conroy, Inc. v. Weyl-Zuckerman & Co., supra [39 F.Supp. 787].

It is, therefore, apparent that on all the facts, including the "Findings of Fact" made by the Secretary of Agriculture, which I adopt and incorporate as a part of my findings of fact, the appellant was justified in refusing to accept the cantaloups on their arrival.

The Secretary's order was, therefore, erroneous and must be overruled.

The Clerk will prepare an order for judgment for the appellant.