## L. GILLARDE CO. v. JOSEPH MARTI-NELLI & CO., Inc.

### No. 4322.

Circuit Court of Appeals, First Circuit.
May 17, 1948.
Opinion Amended on Rehearing
July 8, 1948.

See 169 F.2d 60.

Henry J. Stein, óf Boston, Mass. (Harold S. Lansing and Blanksten & Lansing, all of Chicago, Ill., on the brief), for appellant.

Emerson S. Searle, of Springfield, Mass. (Silvio Martinelli, of Springfield, Mass., on the brief), for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is a proceeding under the Perishable Agricultural Commodities Act of 1930, § 1 et seq., 7 U.S.C.A. § 499a et seq. The case is before us on appeal from a judgment of the district court which reversed a reparation order issued by the Secretary of Agriculture. The facts are undisputed.

On or about June 21, 1943 the complainant, L. Gillarde Company of Chicago, Illinois, sold to the respondent, Joseph Martinelli & Co., Inc., of Springfield, Massachusetts, a carload of cantaloups f. o. b. Yuma, Arizona, for the sum of $1843.25 on a rolling acceptance final basis. The cantaloups were stated to be U. S. No. 1 grade at shipping point. They had been inspected at the shipping point on June 20, 1943, the date of shipment, and in fact graded U. S. No. 1. They arrived in Springfield on July 3rd. On July 5th the respondent wired the complainant that it was rejecting the melons. An agent of the U. S. Department of Agriculture made an inspection of the shipment in Springfield on July 6th which showed many over-ripe and soft melons. He found that the cantaloups contained decay ranging from 35% in some samples to 100% in others, averaging approximately 85%, mostly Cladosporium Rot.[1] The complainant refused to take the melons back and they were abandoned to the railroad company which sold them for $300. They had not moved under normal transportation services and conditions and on August 31st a claim was filed against the

---

[1] Cladosporium Rot was described by an expert witness as a disease of field origin not apparent to the naked eye when melons are in a green ripe or hard ripe stage but which develops as the melons ripen causing them to decay.

railroad on behalf of the complainant for $1759.50, the invoice cost to it. This claim was settled on the basis of 50% or $879.75. After collection costs of $175.95 were deducted, the complainant netted $703.80. The respondent was not consulted in the making of the claim against the railroad and did not take any action in regard to it. The respondent has not paid any part of the contract price to complainant.

The respondent was licensed under the Perishable Agricultural Commodities Act. Section 2(2) of the Act provides that it shall be unlawful for a dealer to reject or fail to deliver in accordance with the terms of the contract without reasonable cause any perishable agricultural commodity bought or sold in interstate commerce. Section 5 provides that any dealer who violates any provision of Section 2 shall be liable to the person injured thereby for the full amount of damages sustained in consequence of such violation. This liability may be enforced either by complaint to the Secretary or by suit in any court of competent jurisdiction. Section 6 provides for filing of complaints with the Secretary of Agriculture. Section 7 provides that if the Secretary determines that any party has been injured by a violation of Section 2, he shall determine the amount of damage done and issue a reparation order. Any party adversely affected by the entry of a reparation order may appeal to a district court. The suit in the district court is a trial de novo and proceeds in all respects like other civil suits for damages except that the findings of fact and orders of the Secretary are prima facie evidence of the facts contained therein.

On August 19, 1943, an informal complaint was filed with the Secretary against the respondent on account of the rejection of the cantaloups and on October 11, 1944, a formal complaint was filed. After a hearing the Secretary of Agriculture concluded that "since the sale to respondent was on 'a rolling acceptance final' basis, the respondent had no right of rejection but was limited to the recovery of damages from the seller for a breach of contract, if such could be shown." The rejection of the cantaloups was found to be without reasonable cause and in violation of Section 2 of the Act. On July 3, 1946, the respondent was ordered to pay to the complainant within thirty days as reparation the sum of $1139.45, the contract price less the net recovery from the railroad, with interest thereon at 5% per annum from July 5, 1943 until paid. 5 A.D. 555. Respondent appealed to the district court, filing a bond for $2500. In that court a motion was made by the complainant to dismiss the appeal on the ground that the appeal bond was inadequate and insufficient. The motion was denied.

The district court accepted the Secretary of Agriculture's findings of fact and adopted them as part of its findings of fact. It also found that the cantaloups were not in fact U. S. No. 1 melons at the point of shipment as required by the contract but were inherently defective in that they were infected with Cladosporium Rot. It held that the cantaloups did not meet the warranties of description and quality; that the respondent was justified under the Uniform Sales Act in rejecting them; and that the order of the Secretary of Agriculture should be overruled. 1947, 73 F.Supp. 293. Judgment was entered for the respondent and the complainant appealed.

The only important issue which is raised before us is whether the respondent violated Section 2 of the Act which makes it unlawful for any dealer to reject without reasonable cause any perishable agricultural commodity bought or contracted to be bought by it in interstate commerce. The regulations which have been issued by the Secretary of Agriculture under the authority of Section 15 of the Act define "reject without reasonable cause" to mean:

"* * * the act of any person, who has purchased or offered to handle on consignment or otherwise, for or on behalf of another, produce in commerce, (1) of refusing or failing to accept such produce within a reasonable time, or (2) of advising the seller or shipper or his agent that such produce will not be received in accordance with the contract or offer, or (3) of indicating an intention not to accept such produce

through an act or failure to act inconsistent with the contract." 7 Code Fed.Reg. § 46.2(q) (Cum.Supp.1943).

If the buyer's action in rejecting was not in accord with the contract, it was not a rejection for reasonable cause. We thus turn to a consideration of the contract.

The Secretary of Agriculture and the district court both found that the terms of the sale were "rolling acceptance final". Terms which are commonly used in contracts involving perishable agricultural commodities have been defined· in the regulations:

"§ 46.24 Terms construed. Unless otherwise defined, the following terms when included in a contract or communication involved in any investigation made or hearing held pursuant to the act shall be construed, respectively, as follows:

&ast; &ast; &ast; &ast; &ast; &ast;

"(i) 'F. o. b.' (for example, 'f. o. b. Laredo, Tex.', or even 'f. o. b. California') means that the produce quoted or sold is to be placed free on board the boat, car, or other agency of the through land transportation at shipping point, in suitable shipping condition (see definitions of 'suitable shipping condition', paragraphs (j) and (k) of this section), and that the buyer assumes all risk of damage and delay in transit not caused by the shipper, irrespective of how the shipment is billed. The buyer shall have the right of inspection at destination before the goods are paid for, but only for the purpose of determining that the produce shipped complied with the terms of the contract or order at time of shipment, subject to the provisions covering suitable shipping condition. Such right of inspection shall not convey or imply any right of rejection by the buyer because of any loss, damage, deterioration, or change which has occurred in transit.

"(j) 'Suitable shipping condition', in relation to direct shipments, means that the commodity, at time of billing, is in a condition which, if the shipment is handled under normal transportation service and conditions, will assure delivery without abnormal deterioration at the destination specified in the contract of sale.

"(k) 'Suitable shipping condition', in connection with reconsigned rolling or tramp cars, means that the commodity, at time of sale, meets the requirements of this phrase as defined in paragraph (j) of this section, relating to direct shipments.

"(l) 'F. o. b. acceptance' means the same as 'f. o. b', except that the buyer assumes full responsibility for the goods at shipping point and has no right of rejection on arrival, nor has he any recourse against the shipper because of any change in condition of the produce in transit, unless the produce when shipped was not in suitable shipping condition (see definitions paragraphs (j) and (k) of this section). The buyer's remedy under this method of purchase is by recovery of damages from the shipper and not by rejection of the shipment.

"(m) 'F. o. b. acceptance final' means that the buyer accepts the produce f. o. b. cars at shipping point without recourse.

&ast; &ast; &ast; &ast; &ast; &ast;

"(s) 'Rolling acceptance' means that the buyer accepts at time of purchase produce which is in the possession of the transportation company and under movement from shipping point &ast; &ast; &ast; the buyer assumes full responsibility for transportation of the goods from time of purchase, has no recourse against the seller because of any change in condition after time of purchase unless the goods when shipped were not in suitable shipping condition, and has no right of rejection on arrival. The buyer's remedy under this method of purchase is by recovery of damages from the shipper and not by rejection of the shipment."

Although rolling acceptance is defined in the regulations, rolling acceptance final is not. But in regard to the rights of the buyer, it has substantially the same meaning as f. o. b. acceptance final. L. Gillarde Co. v. Ritter & Co., 1945, 4 A.D. 594; Battistini Bros. v. Senter Bros., Inc., 1945, 4 A.D. 571; Schoenburg, Price & Co. v. Lewis D. Goldstein Fruit & Produce Corp., 1943, 2 A.D. 772. The relationship between rolling acceptance and rolling acceptance final is the same as between f. o. b. acceptance and f. o. b. acceptance final. Under an f. o. b. acceptance final contract there can be no rejection by the buyer.

LeRoy Dyal Co. v. Allen, 4 Cir., 1947, 161 F.2d 152; Nick Argondelis v. Senter Bros., Inc., 1945, 4 A.D. 420. Rolling acceptance final has been similarly defined in a long line of Agricultural Department decisions. Under this type of contract the buyer has no recourse if the produce was up to the contract requirements at the time of shipment. He has no recourse for defects of quality or condition at the destination point. There is no implied warranty of suitable shipping condition. There can be no rejection. The buyer's only remedy is to sue for damages if specifications of the contract, such as grade or quality at the time of shipment, have not been complied with. L. Gillarde Co. v. Ritter & Co., supra; Battistini Bros. v. Senter Bros., Inc., supra; Schoenburg, Price & Co. v. Lewis D. Goldstein Fruit & Produce Corp., supra. Whether the terms of the contract are rolling acceptance or rolling acceptance final, there is no right of rejection. The only difference between the two terms is that under the former, there is a warranty of suitable shipping condition. Under the latter, there is no such warranty and the buyer is not entitled to recover damages for change in condition during transit. Of course under either form of contract the buyer may recover damages for the seller's failure to comply with the contract as to the character of the goods or any other material provision. Cf. LeRoy Dyal Co. v. Allen, supra at 158 of 161 F.2d.

■■ It is clear that under the express terms of the contract there was no right to reject. The respondent, however, maintains that it had a right to reject if the goods were not in suitable shipping condition. It relies on the Uniform Sales Act which has been enacted in Massachusetts [2] and which provides that a buyer may reject goods if there has been a breach of warranty. Uniform Sales Act § 69; Mass. Gen. Laws (Ter.Ed.) c. 106, § 58 (1932). The district court agreed with the respondent. In so doing, we think it was in error. The terms used in the contract were words that have been given a definite meaning by the regulations and decisions under the Per-

ishable Agricultural Commodities Act. The respondent is licensed under the Act. The melons were sold in interstate commerce. When terms which have been given a definite meaning under the Act are used by licensees, in transactions governed by the Act, it can not later be maintained that a different meaning was intended. The Uniform Sales Act as adopted in Massachusetts contains nothing to the contrary but in fact provides:

"If any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or sale." Uniform Sales Act § 71; Mass.Gen.Laws (Ter.Ed.) c. 106, § 60 (1932).

■ The Sales Act only provides rules for interpretation of contracts and states what rights arise if not otherwise provided. Here the contract definitely states that there is no right of rejection and that the only recourse is for damages if the goods did not meet the specifications of the contract when shipped. Nothing in the Sales Act purports to prevent such a contract or to override such express terms. Cf. Sharples Separator Co. v. Domestic Electric Refrigerator Corp., 3 Cir., 1932, 61 F.2d 499.

■ The cause must therefore be remanded to the district court since that court erroneously held that there was a right to reject. On remand, however, the respondent's defense that the cantaloups were not U.S. No. 1 when shipped may be considered by way of recoupment of damages. As stated above, under a rolling acceptance final contract, there is no warranty of suitable shipping condition but the seller is liable for a breach of the specifications of the contract. The district court found that there was an express term of the contract that the cantaloups were U.S. No. 1. Since the district court found that they were not, the buyer is entitled to recoup for the breach by the seller the difference between the value of what was furnished and the value

---

[2] No question of conflict of laws has been raised. It has been assumed by all that Massachusetts law governs the contract.

of what was contracted for. Cf. United Fruit & Produce Co. v. Mailloux Fruit & Produce Co., 1945, 4 A.D. 578; D. B. Bruno & Co. v. S. Goldsamt, Inc., 1942, 1 A.D. 605.

█ That this is so appears fairly evident to us, but the Agricultural Department held that there was a waiver of this defense by the rejection of the shipment. We see no reason why the buyer's mistake as to its remedy should cause it to forfeit a remedy it would otherwise have. Of course, the buyer must bear any loss that results from its wrongful rejection. Thus it may well be that if the respondent had to accept but had taken the car and promptly disposed of it, there would not have been such a great loss. If this be so, of course the respondent must bear that loss. But we do not see why the respondent's wrongful rejection should cause a complete forfeiture of its claim for breach of contract.

█ The complainant has also assigned as error the district court's refusal to dismiss the appeal from the Agricultural Department because the bond was for only $2500. The award which was rendered on July 3, 1946, was for $1139.45 plus interest from July 5, 1943, until paid. Section 7(c) of the Act provides that a bond of double the amount of the reparation award must be posted on appeal. Complainant contends that interest from July 5, 1943 to the date of appeal, July 30, 1946, which amounted to $174.86, must be considered part of the award and thus the total award was $1314.31, so that a bond of $2628.62 was required. We agree with the district court that the appeal should not be dismissed for this reason. Even if interest unto the date of appeal should be considered part of the award proper, there has been substantial compliance here. The amount of the bond is more than adequate in a practical sense.

The judgment of the district court is vacated and the cause remanded for further proceedings.