## JOSEPH MARTINELLI & CO., Inc. v. SIMON SIEGEL CO.

### No. 4391.

United States Court of Appeals First Circuit.

July 21, 1949.

Emerson S. Searle, Springfield, Mass. (Silvio Martinelli, Springfield, Mass., on the brief), for appellant.

D. Jerome Donovan, Boston, Mass. (Golbus & Golbus, Chicago, Ill., Vincent E. Pichulo, Boston, Mass., and Donovan & Higgins, Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment), and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the District of Massachusetts in effect affirming a reparation order made by the Secretary of Agriculture in a proceeding brought before him by the appellee against the appellant under the Perishable Agricultural Commodities Act, 1930, 46 Stat. 531, 7 U.S.C.A. § 499 a–r.

The appellant, Joseph Martinelli & Co., Inc., a licensee under the Act, is a Massachusetts corporation having its principal place of business in Springfield in that Commonwealth. The appellee, Simon Siegel Company, is a partnership doing business in Chicago, Illinois. On October 27, 1945, Martinelli, acting through a broker in Chicago as its agent, purchased a carload of 1145 "lugs" or baskets of Emperor grapes from Siegel at an agreed price of $2.07 per "lug", or $2,370.15, "f. o. b. shipping point acceptance final." This carload had been federally inspected at its shipping point, Victor, California, on October 17, and graded U.S. No. 1 Table as to 1022 "lugs"; the remaining 123 "lugs" in the carload not being covered by inspection. On the same day the car started eastward billed to Kansas City, Missouri, but while on route Siegel diverted it to St. Louis for delivery to a consignee for sale by the latter on joint account. This consignee made a hurried examination of the shipment on its arrival in St. Louis on October 26, and finding the grapes somewhat decayed, refused to accept delivery and immediately notified Siegel of its rejection and of the reason therefor. Thereupon, on the afternoon of the same day and without having the grapes officially inspected, Siegel diverted the shipment to himself at New York, New York. The transaction with Martinelli taking place while the car was on route to the latter destination, Siegel diverted it to Martinelli in Springfield where it arrived on October 30.

Upon arrival in Springfield the president and general manager of Joseph Martinelli & Co., Inc., personally inspected the shipment, and finding substantial decay therein, promptly rejected it and so notified Siegel. Siegel thereupon diverted the car to a consignee in Boston who sold the grapes at auction for a net price to Siegel of $181.-34.[1] The latter then filed a complaint with the Secretary of Agriculture against Martinelli pursuant to 7 U.S.C.A. § 499f, seeking reparation in the amount of the difference between the above sum and the agreed price of $2,370.15 for the carload, or $2,188.81.

Martinelli's principal defense in the proceeding before the Secretary of Agriculture was that at the time it purchased the grapes on October 27 Siegel fraudulently represented that the grapes were in good condition and were continuously moving eastward, when in fact he well knew from the transaction with his consignee in St. Louis on the day before that such was not the case, and that this fraud practiced upon it by Siegel gave it the right to reject the shipment in spite of the fact that the purchase was on an "f. o. b. shipping point acceptance final" basis. The Secretary disposed of this defense on the ground that there was "no showing that any false or misleading statement was made for a fraudulent purpose" by Siegel, and then, interpreting the terms of the sale as giving no right of rejection, entered a reparation order in the amount demanded with interest thereon at 5% from October 30, 1945, until paid.

Martinelli thereupon appealed to the court below, 7 U.S.C.A. § 499g(c), and that court after hearing entered the judgment from which the instant appeal was taken.

At the pre-trial conference below all issues of fact save that of fraud with respect to the condition of the grapes when sold were eliminated, it being then agreed that "the only issues to be considered by the jury in the case in this court are, first, whether the grapes were decayed; and second, whether the shipper knew that they were decayed." But at the hearing the par-

---

[1] Federal inspection in Boston on November 5 disclosed that the berries which were free from decay were generally firm, but stems were wilted, and decay of berries generally ranged from 15 to 30 percent, consisting principally of gray mold rot in various stages.

ties waived the right to trial by jury agreeing to submit the case to the court. However, that court did not make any findings with respect to the issue of fraud. It ruled as matter of law that Martinelli, having purchased the grapes "f. o. b. shipping point acceptance final", had no right of rejection, its only remedy, if it had one, being "to sue for damages if the specifications of the contract, such as grade or quality at the time of shipment, had not been complied with, or if it suffered as a result of any fraudulent representations made by the respondent." Then, however, the court went on to say: "Even assuming, but not deciding, that the petitioner actually was induced to buy the grapes through the fraudulent misrepresentations of the respondent, and that it had a right to reject the shipment because of such fraud, the defendant could not be relieved of the results of its rejection here. There is no evidence that the petitioner rejected the shipment of grapes because of any fraud practiced by the respondent. The only evidence here is that the petitioner rejected the grapes because of their poor condition on arrival at Springfield. There is no evidence that it knew of or believed at that time that the respondent was guilty of any fraud."

We cannot agree with this last conclusion of the court below. If Siegel's fraud, provided there was such, gave Martinelli the right to reject the shipment, a matter to be considered presently, we think Martinelli did not lose that right by reason of its rejection of the shipment before it discovered the fraud which had been practiced upon it. This is for the reason that fraud in the inception of a contract, although it does not render the contract void, renders it voidable at the election of the person defrauded, with the result that if the defrauded party to a contract breaks it before he discovers the fraud, he may nevertheless assert the fraud as a defense as soon as he discovers it, and demand rescission on that account when sued for breach of contract. 3 Williston on Sales (Rev.Ed.) § 648. See also 5 Williston on Contracts (Rev.Ed.) § 1526, in which it is said "The fact that the defrauded party has broken the contract before discovery of the fraud will not deprive him of his right to damages for the fraud in inducing him to enter into it; * * * nor will it prevent the exercise of his power of avoidance * * *" See also Am.Law Inst., Restatement of the Law of Contracts § 490(1) Comment a, Illustration 1; 24 Am. Jur., Fraud and Deceit, § 212.

We come, therefore, to the question whether Siegel's fraud, if proved, afforded a valid ground for Martinelli's rejection of the grapes under the terms of the contract under which they were purchased.

Undoubtedly under either the Common Law or the Uniform Sales Act a purchaser who has been induced to enter into a contract by fraud has the right to avoid the contract, as Martinelli promptly and unequivocally did when it rejected the shipment of grapes. The question is whether the Perishable Agricultural Commodities Act, 1930, including the regulations promulgated thereunder, deprives a purchaser on an acceptance final basis of that right. We do not think that it does.

The purpose of the Perishable Agricultural Commodities Act, 1930, was well summarized by the Court of Appeals for the Fourth Circuit in LeRoy Dyal Co. v. Allen, 161 F.2d 152, 156, when it said: "That statute, as its legislative history shows, was passed primarily to eliminate unfair practices in the marketing of perishable agricultural commodities in interstate commerce in the case of a declining market by making it difficult for unscrupulous persons to take advantage of shippers by wrongful rejection of the goods upon arrival at a point where it is expensive and impracticable for the shipper to enforce his legal rights." But to effectuate this purpose Congress did not go so far as to make rejection by buyers unlawful altogether. Instead it made rejection of shipments of perishable agricultural commodities by buyers unlawful "without reasonable cause" 7 U.S.C. § 499b(2), and empowered the Secretary of Agriculture to make regulations clothing that phrase with definite meaning, which the latter did by defining certain contractual terms whereby a seller could prevent rejection by a buyer;

"acceptance final" being one of those terms. This in a nutshell is the general scheme of the Act.

Thus it was held in this Circuit in L. Gillarde Co. v. Joseph Martinelli & Co., Inc., 168 F.2d 276, amended 1 Cir., 169 F.2d 60, certiorari denied 335 U.S. 885, 69 S.Ct. 237, and it was held in the Fourth Circuit in LeRoy Dyal Co. v. Allen, supra, that the Act prevents a buyer on an "acceptance final" basis (rolling acceptance final in the case in this Circuit; f. o. b. shipping point acceptance final in the other) from rejecting a shipment of perishable agricultural commodities for defects of quality or condition, and breach of contract as to date of shipment or date of inspection of the goods, respectively, the only recourse given a buyer by the Act in both situations being a suit for damages against the seller. But in neither of these cases was there any question of the seller's fraud, (indeed no such case has been cited to us, nor have we found any decided either by the courts or by the Department of Agriculture) and we do not think the cases are to be considered as any authority for the proposition that a defrauded buyer cannot reject, but is limited to suit against the seller as in the case of breach of material specifications in a contract.

█ On the contrary, we think that a buyer's right of rejection for fraud is unaffected by the Perishable Agricultural Commodities Act, 1930. This is for the reason that the technique adopted by Congress to prevent wrongful rejection by unscrupulous buyers was not to prohibit rejection entirely, but to provide for the definition of certain terms which might be employed in contracts to limit a buyer's right of rejection. And this method of regulation presupposes a valid contract, not one which may be avoided with the result that the entire contract is relegated to the discard, including limiting provisions therein such as "acceptance final" as defined by the regulations promulgated by the Secretary of Agriculture pursuant to the authority conferred upon him by the Act. For those regulations see L. Gillarde Co. v. Joseph Martinelli & Co., Inc., supra and LeRoy Dyal Co. v. Allen, supra. Hence we

conclude that a buyer is as free to reject for fraud now as he was before the passage of the Act.

It is evident, therefore, that the issue of fraud in this case must be considered and passed upon by the court below.

The judgment of the District Court is set aside and the case is remanded to that court for further consistent proceedings; the appellant recovers costs of appeal.

MAGRUDER, Chief Judge, concurs in the result.