# United States Court of Appeals
## For the First Circuit

No. 11-1226

ALPHAS COMPANY, INC.,

Plaintiff, Appellant,

v.

DAN TUDOR & SONS SALES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Noah B. Goodman on brief for appellant.
Valerie S. Carter, Carter & Doyle LLP, Bart M. Botta, and
Rynn & Janowsky, LLP on brief for appellee.

May 16, 2012

**LYNCH, Chief Judge**.  This case involves the statutory appeals process to the federal courts for review of disputes over perishable agricultural goods.  The question presented, new to this court, is whether a petitioner's failure to comply with the bond requirement in the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a et seq., which authorizes an appeal to a federal district court from a reparation order by the Secretary of Agriculture, renders that appeal ineffective under 7 U.S.C. § 499g(c).  We hold that appellant's failure to file the required bond here rendered its appeal to the district court ineffective.  We affirm the district court's grant of the motion to dismiss the appeal.

### I.

Dan Tudor & Sons Sales is a California-based grower of perishable agricultural commodities; appellant Alphas Company is a Massachusetts-based produce supplier.  Both companies were licensed to do business under PACA.  Between September 21, 2005 and November 5, 2005, Tudor sold Alphas seventeen shipments of table grapes, for which Alphas failed to make payment.  In response, on May 18, 2006, Tudor filed a reparation complaint against Alphas with the Secretary under PACA for recovery of the payment due.

In an administrative decision on November 4, 2009, the Secretary awarded reparations to Tudor in the amount of $70,328.06, plus interest, as well as the $300.00 filing fee.  Alphas filed a

motion for reconsideration, which the Secretary granted in part on April 14, 2010, in an order revising the reparation award to $61,065.46, plus interest, the $300.00 filing fee, and $6,940.97 for fees and expenses. This case involves Alphas' attempt to challenge that order in federal court.

After entry of the Secretary's order, Alphas and Tudor entered into settlement negotiations. These negotiations ultimately failed,[1] and on May 14, 2010, Alphas filed a petition and notice to appeal the reparation order pursuant to 7 U.S.C. § 499g in the U.S. district court for the District of Massachusetts.

Section 499g authorizes an appeal from a reparation order within thirty days of the order's issuance to the district court of the district in which the administrative hearing was held. Id. § 499g(c). Section 499g also provides that:

> [An] appeal shall not be effective unless within thirty days from and after the date of the reparation order the appellant also files with the clerk a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail.

---

[1] Alphas contends that the two parties reached a mutual agreement to dismiss the underlying action two days before the appeals deadline ran, but that Tudor subsequently failed to execute and return the settlement documents, forcing Alphas to file its petition for appeal on short notice.

-3-

_Id._ Although Alphas stated in its petition and notice of appeal that it had "procured a bond as required by statute," it did not file the required bond.

On June 4, 2010, Tudor filed a Rule 12(b)(1) motion to dismiss, in which it argued that the district court lacked subject matter jurisdiction to hear Alphas' appeal because Alphas had failed to timely file the mandatory bond. In its June 18, 2010 opposition to Tudor's motion to dismiss, Alphas represented to the district court that it had made inquiries to twelve bond companies, completed eight bond applications, and was in the process of obtaining approval for a bond from two different companies.

Alphas also contended that its failure to file the bond should be excused because that failure was due entirely to what it described as bad-faith conduct on Tudor's part. Specifically, Alphas alleged that Tudor had agreed to settle the case as of May 12, 2010, two days before the appeals deadline ran. Alphas maintained that it had transmitted what it called final settlement papers to Tudor for signature, and had only realized upon not receiving back the executed settlement documents by noon on May 14, 2010, the same day as the appeals deadline, that Tudor did not intend to settle the case after all. As a result of Tudor's tactics, Alphas argued, it was not able to post the required bond in time; nevertheless, Alphas assured the court, by the time the court addressed Tudor's motion, it "will have filed its Bond."

Alphas additionally asked the district court to deny Tudor's motion to dismiss, arguing that Tudor would not suffer any prejudice as a result of a delay allegedly caused by Tudor's own fraud and misconduct.

By the time the motion to dismiss was argued, however, over six months later, Alphas still had not filed the required bond. Instead, Alphas stated to the court that it was "ready to file the bond within ninety days" should the court decide not to dismiss the petition. Alphas Co. v. Dan Tudor & Sons Sales, Inc., No. 10-10831, 2011 WL 662723, at *2 (D. Mass. Jan. 11, 2011).

The district court referred the case to a magistrate judge. On January 11, 2011, the magistrate judge issued a report and recommendation, finding the bond requirement to be "jurisdictional" and recommending that Tudor's motion to dismiss be granted, with prejudice. Id. at *3, *5. The magistrate judge rejected Alphas' argument that failure to file the bond should be excused in this case on grounds of equity. The magistrate judge found that the "jurisdictional" nature of the bond requirement rendered any misconduct on the part of Tudor irrelevant. Id. at *4. The magistrate judge also reserved ruling on Tudor's request for attorney's fees until the district court ruled on the motion to dismiss. Id. On January 25, 2011, Alphas objected to the magistrate judge's report and recommendation, reiterating the arguments it raised in opposition to the motion to dismiss.

In a February 1, 2011 order, the district court adopted the magistrate judge's report and recommendation in full, and remanded for a determination of attorney's fees. Alphas Co. v. Dan Tudor & Sons Sales, Inc., No. 10-10831, 2011 WL 578809 (D. Mass. Feb. 1, 2011).

Alphas timely appealed to this court and sought a stay of the district court's judgment while its appeal was pending so as to preserve its agricultural license under PACA. Absent such a stay, PACA provides for the automatic suspension of an appellant's license upon the district court's dismissal of the appeal. 7 U.S.C. § 499g(d).

Tudor moved to dismiss the appeal to this court as premature in light of its pending motion for attorney's fees. This court denied that motion on April 5, 2011, but stayed appellate proceedings until the district court either acted on Tudor's pending request for attorney's fees or communicated its intention to hold those proceedings in abeyance until the appeal issued.

On August 1, 2011, the district court awarded attorney's fees to Tudor in the amount of $4,808.50, and the following day entered an order denying Alphas' motion to stay unless Alphas posted a supersedeas bond within sixty days. On August 24, 2011, Alphas posted a supersedeas bond -- which is not the same as a

§ 499g bond[2] -- in the amount of $100,000. On September 8, 2011, this court lifted the stay of appellate proceedings.

Alphas argues to us that PACA's bond requirement is not necessarily jurisdictional and that the district court has some discretion to excuse strict compliance with the requirement in certain exceptional cases, and that Tudor's misleading conduct here presents such a case. Tudor argues that the appeal should be dismissed because the bond requirement is jurisdictional, and that, in any event, it did not engage in any inequitable conduct. As we explain, we view the issue differently.

II.

This court reviews de novo the district court's order dismissing the appeal for lack of subject matter jurisdiction. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

PACA was enacted during the Great Depression in the 1930s "to suppress certain unfair and fraudulent practices in the marketing of fresh fruits and vegetables." S. Rep. No. 73-554, at 1 (1934). It requires all "merchants, dealers, or brokers" subject to its terms to obtain from the Secretary of Agriculture a license to engage in business transactions under the Act. Id. Licensees

---

[2] In general, in order to stay the district court's judgment during an appeal to the federal appeals court, a party must file a supersedeas bond in the district court. See Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(1)(B). Section 499g(c) requires any party seeking to appeal an adverse decision by the Secretary to the federal district court to file a bond in that court in double the amount of the reparation order, plus interest, costs, and fees.

must "keep such accounts and records as will show fully and correctly all transactions." H.R. Rep. No. 87-1546, at 2 (1962); see 7 U.S.C. § 499b(4). Certain practices are prohibited; among "the most important" of these, S. Rep. No. 73-554, at 1, PACA makes it unlawful for a licensee "to fail or refuse truly and correctly to account and make full payment promptly" for any transaction under the Act, 7 U.S.C. § 499b(4).

To enforce its provisions, PACA authorizes the Secretary to investigate complaints, issue reparation orders, make public certain information concerning violations, and suspend and revoke licenses. In particular, PACA provides for a complaint process through which any licensee subject to the Act may petition the Secretary to review allegations of violations of the Act's terms. 7 U.S.C. § 499f. After a hearing, or in some cases without one,[3] the Secretary may determine whether any violation of PACA has occurred and may order the losing party to make reparations to the prevailing party accordingly. Id. § 499g(a).

Unless the losing party pays the reparation order within five days of the payment compliance period set by the Secretary, or takes an appeal from that order, PACA provides for the automatic and indefinite suspension of that party's license unless and until the party fully complies with the Secretary's order. Id.

---

[3] Complainants have the opportunity for a hearing where the damages claimed exceed $30,000. 7 U.S.C. § 499f(c)(2).

§ 499g(d). Where the losing party elects to file an appeal, the automatic suspension provision goes into effect upon either the court's dismissal of the appeal or affirmance of the Secretary's order. Id.

To "discourage frivolous appeals" from the orders of the Secretary, taken simply to delay payment and so "escape the automatic suspension of license provided by the act for nonpayment of a reparation award" until the appeal is decided, H.R. Rep. No. 75-915, at 3 (1937), Congress added the bond requirement to PACA. Section 499g(c) provides that a party's "appeal shall not be effective unless within thirty days . . . the appellant also files with the clerk a bond." 7 U.S.C. § 499g(c). The bond requirement in section 499g(c) provides a disincentive to parties seeking to appeal in order to defer their payment obligations for some months or years, while still benefitting from their PACA license in the interim. See H.R. Rep. No. 75-915, at 3. The requirement also protects the prevailing party from suffering the consequences of any financial deterioration -- including bankruptcy -- experienced by the losing party during the sometimes lengthy appeals process.[4] The bond requirement is critical to the effective operation not only of PACA's complaint process and internal enforcement mechanism, but also to the effective operation of PACA as a whole.

_____

[4] PACA also permits successful appellees to recover the costs and attorney's fees they incur in defending the decisions of the Secretary on appeal. 7 U.S.C. § 499g(c).

The language in section 499g(c) is unambiguous and mandatory: a party's appeal "shall not be effective" unless the bond is timely filed.  7 U.S.C. § 499g(c).  Courts have repeatedly recognized as much and held that failure to file the required bond renders a party's appeal ineffective (albeit they have frequently used the language that the defect is "jurisdictional").  See, e.g., Bagwell Farms Produce Co. v. Farm-Wey Produce, Inc., No. CV-97-C-0321-S (N.D. Ala. July 21, 1997) (dismissing appeal due to failure to timely file bond), aff'd, 162 F.3d 1177 (11th Cir. 1998) (Table); Miloslavich v. Frutas Del Valle De Guadalupe, S.A., 637 F. Supp. 434, 436 (S.D. Cal. 1986) (finding bond requirement "jurisdictional"), aff'd, 815 F.2d 714 (9th Cir. 1987) (Table); O'Day v. George Arakelian Farms, Inc., 536 F.2d 856, 862 (9th Cir. 1976) (upholding requirement that a bond be filed); Chidsey v. Geurin, 314 F. Supp. 480, 482 (W.D. Mich. 1970) (same), aff'd, 443 F.2d 584 (6th Cir. 1971).

The legislative history of Section 499g(c) confirms that noncompliance with the mandatory bond requirement negates the effectiveness of the appeal.  See H.R. Rep. No. 87-1546, at 7 (report accompanying bill) (amending 7 U.S.C. § 499g(c)) ("Section 9 [of the bill] amends section 7(c) of the act to make it clear that an appeal from a reparation award of the Secretary shall not be effective as an appeal, and therefore not a matter within the jurisdiction of the district court of the United States in which

-10-

the petition is filed, unless the required bond is filed with the court within 30 days from and after the date of the Secretary's order.").

Here, it is undisputed that Alphas did not file the required bond. Alphas argues nonetheless that there is an exception to the bond requirement: where warranted by the general equitable circumstances, the district court may excuse strict compliance with the rule. It argues that where a party deliberately misleads its opponent into thinking a settlement agreement has been reached, right up until the appeals deadline runs -- as Alphas alleges Tudor did here -- the district court may excuse a late or defective bond filling.

To support its argument, Alphas cites several cases in which courts considered whether the bond amount had been properly calculated. These cases do not support Alphas' position. In this court's 1948 opinion in L. Gillarde Co. v. Joseph Martinelli & Co., 168 F.2d 276 (1st Cir. 1948),[5] we affirmed the district court's refusal to dismiss the appeal where "there [had] been substantial compliance" with the bond requirement even though the parties disputed the exact amount of the required bond. Id. at 281. Nothing in that case, or in the other cases cited by Alphas,

----

[5] Alphas' citation to O'Day v. George Arakelian Farms, Inc., 536 F.2d 856 (9th Cir. 1976), is inapposite because that case concerned the as-applied constitutionality of the double bond requirement.

-11-

supports the argument that there is discretion to ignore the bond requirement entirely.

Tudor argues that the bond requirement is jurisdictional, and thus permits no exceptions, equitable or otherwise. The topic of whether a rule is properly considered to be jurisdictional or merely a claims processing rule has been the subject of a number of Supreme Court decisions over the last several years. See, e.g., Stern v. Marshall, 131 S. Ct. 2594, 2606-08 (2011); Bowles v. Russell, 551 U.S. 205, 209-14 (2007). Here, Congress set forth the rule that the "appeal shall not be effective" without the required bond, and while the statutory language does not frame the rule in terms of jurisdiction, a House Committee Report does. See H.R. Rep. No. 87-1546, at 7. Still, the bond requirement may be analogized to something more like a condition precedent, somewhat akin to the certificate of appealability in 28 U.S.C. § 2253(c)(3), which was held non-jurisdictional in Gonzalez v. Thaler, 132 S. Ct. 641 (2012), or the copyright registration requirement held non-jurisdictional in Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237 (2010).

The outcome of this case, however, does not turn on whether compliance with the bond requirement is viewed as jurisdictional. We are convinced that Congress has precluded a reading of the statute that allows federal courts the discretion to exercise jurisdiction absent compliance with the bond requirement.

-12-

Whether there can ever be such extreme circumstances as to warrant judicial creation of an equitable exception is not a question presented by this case, since Alphas does not come close to making such a showing.

Here, there is no question that Alphas <u>never</u> undertook to file the required bond. Alphas argues that it satisfied the bond requirement by filing a $100,000 supersedeas bond after the district court dismissed its appeal, for the purpose of staying the district court's judgment pending appeal to this court. However, the supersedeas bond is not the required bond under PACA, it was not filed until more than fifteen months after PACA's deadline ran, and it may not be sufficient to cover the full sum due to Tudor in this case.[6]

Because Alphas did not file the required bond here, we hold that its appeal was not effective.

III.

For these reasons, we affirm the district court's grant of the motion to dismiss. Costs are awarded to Tudor.

---

[6] If Tudor seeks attorney's fees for the appeal, it should file the appropriate motion.