Franklin W. SIMON, Webb Place Condominiums, Inc. and Greystone Condominiums, Inc., Plaintiffs, Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of 1st American Bank for Savings, Defendant, Appellee.

No. 93–2319.

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1994.

Decided Feb. 23, 1995.

---

Lee H. Kozol, with whom David A. Rich and Friedman & Atherton, were on brief for appellants.

J. Scott Watson, with whom Ann S. Du-Ross and Richard J. Osterman, Jr., were on brief for appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, .and STAHL, Circuit Judge.

CYR, Circuit Judge.

Plaintiffs-appellants Franklin W. Simon ("Simon"), Webb Place Condominiums, Inc. ("Webb Place") and Greystone Condominiums, Inc. ("Greystone") initiated this action in Massachusetts state court against the Federal Deposit Insurance Corporation ("FDIC"), receiver of 1st American Bank for Savings ("Bank"), seeking declaratory and equitable relief relating to two real estate loan agreements between plaintiffs-appellants and the Bank. Following removal, the United States District Court for the District of Massachusetts dismissed the action on jurisdictional grounds pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D) (1994). We affirm.

# I

## BACKGROUND

In January 1988, Simon, president and sole stockholder of Greystone and Webb Place (collectively: "Borrowers"), entered into two mortgage loan agreements with the Bank, whereby Greystone borrowed $2,500,000 and Webb Place borrowed a total of $3,150,000 with which to finance condominium development projects. The loans were secured by mortgages on the properties to be developed and by Simon's personal guaranty.

When the loans matured on January 31, 1990, the Borrowers sought extensions and further advances to enable completion of the projects. On August 14, 1990, with the outstanding loan balances at $2,500,000 on the Greystone loan and $2,295,490 on the Webb Place loan, the Borrowers entered into two separate Loan Modification Agreements ("Modification Agreements"), whereby the Bank waived all accrued and future interest on the original January 1988 loans and extended their maturity dates to May 31, 1992. The Bank further agreed to lend an additional $816,000 to Greystone and $520,942 to Webb Place, to be disbursed upon the Borrowers' request, for completion of the projects. Finally, the Bank agreed to provide end-loan financing to individual buyers of the completed condominium units.

The Borrowers in turn agreed to complete construction of the mortgaged properties under the supervision of an independent engineer, to devise a marketing plan acceptable to the Bank, and to pay the Bank 100% of the net proceeds from the sale of any unit in the mortgaged properties in return for a partial release of the Bank's mortgage lien. Simon secured his loan guaranties with two certificates of deposit and with mortgages on two real estate properties owned by him. In return, the Bank agreed to limit Simon's total liability on the personal guaranty to $900,000.

All construction loan requisitions by the Borrowers were honored in due course by the Bank until October 18, 1990, when a requisition for $204,657 was dishonored. The following day, the Bank closed and FDIC was appointed receiver.

On October 24, FDIC published notice of its appointment as receiver, alerting creditors that all claims against the Bank were to be submitted to FDIC by January 23, 1991 ("bar date"). On October 25, FDIC mailed notice to all known Bank creditors and, on October 31, notice of FDIC's appointment as liquidating agent of the Bank was mailed to plaintiffs-appellants. Although plaintiffs-appellants did not receive FDIC's notice, they were aware prior to the bar date that FDIC had been appointed receiver of the Bank.

On October 31, plaintiffs-appellants requested that FDIC advise as to its position respecting further loan disbursements under the Modification Agreements. FDIC did not reply. On November 27, plaintiffs-appellants informed FDIC that the Bank was in default under the Modification Agreements for refusing their October 18 requisition. Their letter demanded that the Borrowers' requisitions be met and that the collateral securing Simon's personal guaranty be released due to the Bank's default. FDIC did not reply.

The present action was commenced on April 21, 1992, in state court. Simon sued to recover all collateral pledged to secure his personal guaranty and for a judicial declaration that his personal obligations under the guaranty had been extinguished as a result of the Bank's and FDIC's defaults under the Modification Agreements. The Borrowers

sought a judicial declaration entitling them to a "priority position" among Bank creditors on all obligations incurred by the Borrowers to third parties after FDIC took possession of the Bank's assets.

After removal, the federal district court granted the FDIC motion for summary judgment. It found that neither Simon nor the Borrowers had filed proofs of claim with FDIC despite having received actual notice of FDIC's appointment. Plaintiffs-appellants thus having failed to exhaust their administrative remedies, the district court ruled that their claims were barred under 12 U.S.C. § 1821(d)(13)(D)(i).

## II

## DISCUSSION

 Summary judgment rulings are reviewed *de novo* to determine whether the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Gaskell v. The Harvard Coop. Soc'y*, 3 F.3d 495, 497 (1st Cir.1993) (quoting Fed.R.Civ.P. 56(c)). We view the evidence in the light most favorable to the party resisting summary judgment. *Velez–Gomez v. SMA Life Assurance Co.*, 8 F.3d 873, 874–75 (1st Cir.1993).

### A. *The Simon Guaranty*

Simon contends that FDIC surrendered all claims to the collateral pledged to secure his personal guaranty because the Bank's (and FDIC's subsequent) breach of the Modification Agreements discharged Simon from all liability.

 Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process ("ACRP"), *see* 12 U.S.C. § 1821(d)(3)–(10), governing the filing, determination, and payment of claims against the assets of failed financial institutions following FDIC's appointment as receiver. *Heno v. FDIC*, 20 F.3d 1204, 1206–07 (1st Cir.1994). Upon its appointment as receiver, FDIC is required to

publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). FDIC is also required to mail notice to all known creditors of the failed institution. *Id.* § 1821(d)(3)(C). It has 180 days from the date of filing to allow or disallow claims. *Id.* § 1821(d)(5)(A)(i). Claimants have sixty days from the date of disallowance, or from the expiration of the 180–day administrative decision deadline, within which to seek judicial review in an appropriate United States district court. *Id.* § 1821(d)(6)(A). Failure to comply with the ACRP deprives the courts of subject matter jurisdiction over any claim to assets of the failed financial institution. *See id.* § 1821(d)(13)(D)(i).

 Simon argues that the instant claim for the return of all collateral securing his personal guaranty is not subject to the ACRP because it is not a creditor's claim against the Bank's assets but merely a defense to the contingent loan guaranty held by the Bank. *Cf. In re Purcell*, 141 B.R. 480, 485 (Bankr.D.Vt.1992), *aff'd*, 150 B.R. 111 (D.Vt.1993). *But see Deera Homes, Inc. v. Metrobank for Sav., FSB*, 812 F.Supp. 375, 377–78 (E.D.N.Y.1993). As Simon sees it, therefore, he is entitled to a judgment declaring that the Modification Agreements were breached by the Bank and, consequently, his personal guaranty is unenforceable and the collateral pledged to secure it must be surrendered.

Throughout the litigation, Simon has maintained that the Bank breached the Modification Agreements the day *before* the Bank closed, by refusing to honor the Borrowers' October 18 construction loan requisition. At oral argument, he conceded that the personal guaranty was no longer executory by the time FDIC became receiver on October 19, 1990. *Cf. infra* Section II.B. Similarly, his claim to the collateral securing the personal guaranty consistently has been based on the Bank's October 18 breach of the Modification Agreements. Moreover, Simon's November 27 letter to FDIC demanded *both* that the Bank release the collateral securing his per-

sonal guaranty *and* that the Bank honor the Borrowers' requisitions from October 18.

Thus, Simon's position is and always has been that the Bank's *pre*-receivership refusal to honor the Borrowers' October 18 loan requisition constituted a material breach of the Modification Agreements, entitling him to recover his collateral. It is clear, therefore, that the claim to the collateral securing the personal guaranty is barred as a "claim or action for payment from ... the assets" of a failed financial institution for which FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d)(13)(D)(i).

Simon concedes that the two real estate mortgages securing his personal guaranty are bank "assets." Claims for the recovery of bank assets are barred absent compliance with the ACRP. *Id.* Simon was aware of FDIC's appointment as receiver on October 19, 1990, well before the ACRP bar date. Furthermore, Simon concededly knew, before the bar date, that he had a claim against

FDIC for the return of the collateral. In these circumstances, the failure to comply with the ACRP deprived the district court of jurisdiction over Simon's claim for recovery of the collateral securing his personal guaranty.[1]

## B. *The Borrowers' Claims*

The Borrowers seek compensatory damages for FDIC's alleged post-bar-date repudiation of their pre-receivership Modification Agreements with the Bank. *See id.* § 1821(e)(3)(i). The Borrowers assert that all obligations they incurred to third parties *after* FDIC was appointed receiver are entitled to priority status against Bank assets, on the theory that the Modification Agreements remained executory at the time FDIC was appointed receiver. Consequently, the Borrowers argue, the executory Modification Agreements remained open to affirmance or repudiation by FDIC within a reasonable period following its appointment. *See id.* § 1821(e)(1)–(2). Since FDIC has yet to af-

---

1. Notwithstanding the jurisdictional bar to Simon's claim for the return of his collateral, he contends that the district court should have declared his personal guaranty discharged by the Bank's material breach of its Modification Agreements with the Borrowers, *see, e.g., Ward v. American Mut. Liab. Ins. Co.,* 15 Mass.App.Ct. 98, 443 N.E.2d 1342, 1344 (1983), and that such a claim for declaratory relief is not barred because it does not seek "payment from" the Bank's "assets." Simon's complaint demanded a declaration extinguishing any personal liability arising under his loan guaranty; that is, precluding any future judgment against him for any deficiency over and above the amounts recoverable by FDIC on the collateral securing his personal guaranty. Although the claim to the *collateral* is barred as one against "the [Bank's] assets," 12 U.S.C. § 1821(d)(13)(D)(i), the judicial declaration requested by Simon is said to be purely defensive, designed to preempt any obligation on the part of Simon to make future payments *to* FDIC. *See, e.g., National Union Fire Ins. Co. v. City Sav., FSB,* 28 F.3d 376 (3d Cir. 1994) (holding that § 1821(d)(13)(D)(i) bars contracting party from preemptive judicial declaration that contracting party is not liable on contract with failed institution, even though claim cannot be brought under ACRP; contracting party must await suit by receiver to enforce contract, at which time contracting party may raise rescission as affirmative defense to receiver's contract action). Simon urges us to reject the Third Circuit's interpretation in *National Union,* 28 F.3d at 386–89, that the alternate clause in § 1821(d)(13)(D) (*viz.,* "action[s] seeking a deter-

mination of rights with respect to [ ] the [bank's] assets,") bars his preemptive claim for declaratory relief.

We find this an inappropriate setting for resolving the question in *National Union,* which was not raised below. In addition, dismissal of these claims by the district court was in all events proper, since Simon's claimed entitlement to discharge fails as a matter of Massachusetts law. *See Levy v. FDIC,* 7 F.3d 1054, 1056 (1st Cir.1993) (appellate court is "free to affirm a district court's ruling 'on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceeding below'") (citations omitted). The Massachusetts cases cited by Simon stand only for the generic contract-law proposition that a material breach excuses future performance by the non-breaching party. These cases do not purport to hold, however, that a loan guarantor is relieved from liability for delinquent pre-breach loan advances to the borrowers. The outstanding balances due by the Borrowers total well in excess of Simon's $900,000 unconditional guaranty. *See generally Fleet Nat'l Bank v. Liuzzo,* 766 F.Supp. 61, 65 (D.R.I.1991) (describing nonmutality of promise to repay loan). Finally, Simon not only cites no contractual provision that even purports to entitle him to such blanket relief, but his January 1988 personal guaranty, incorporated by reference in the modified guaranty, is couched in unconditional language. ("The Guarantor's liability hereunder *is absolute and unlimited....*"). Thus, the request for declaratory relief was properly rejected.

firm the Modification Agreements, the Borrowers conclude that the agreements have been repudiated.

Their claim is premature, for failure to exhaust administrative remedies. *See Heno v. FDIC,* 20 F.3d at 1212–13 (publishing FDIC internal manual procedures for filing claims arising from FDIC's post-bar-date repudiation of executory prereceivership contracts with failed institution). In *Heno,* we deferred to FDIC's construction of its enabling statute as according the agency first opportunity to evaluate alleged post-bar-date claims, including those arising after the ninety-day period following notice of FDIC's appointment as receiver, *id.* at 1209. As the Borrowers have yet to exhaust their administrative remedies pursuant to the internal agency procedures published in *Heno,* we affirm the district court judgment, without prejudice to Borrowers' subsequent submission of an administrative claim to FDIC.

*The district court judgment is affirmed. The parties are to bear their own costs.*