59 F.3d 164
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 BRINKLEY & CO., INC., Plaintiff, Appellant,
v.
Vincent T. MATTEUCCI, et al., Defendants, Appellees.
 No. 94-2284.
 United States Court of Appeals,
First Circuit.
 June 28, 1995.
 
 Valeriano Diviacchi, with whom Diviacchi Law Office was on brief for appellant.
 Harvey Weiner, with whom Michael P. Duffy and Peabody & Arnold were on brief for appellees Barber, Looney, Grahn, Synder, Levin, Pisegna, Kelly, Farrell and Grossman.
 Maria R. Durant, with whom Michael A. Collora and Dwyer & Collora were on brief for appellee Matteucci.
 D.Mass.
 AFFIRMED.
 Before SELYA, CYR and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Brinkley & Co., Inc. ("Brinkley Co.") appeals from a district court judgment summarily dismissing its complaint against Vincent Matteucci ("Matteucci"), former CEO of Athena Management Co., Inc. ("Athena"), and various members of the law firm of Looney & Grossman. As summary judgment was proper, we affirm.
 
 
 2
 * BACKGROUND[1]
 
 
 3
 Athena was incorporated on August 28, 1984, for the purpose of providing investment management services. Matteucci served as its first president. Peter Brinkley, Brinkley Co.'s principal shareholder, was hired by Athena in April 1987 and eventually became president and CEO, although he was never a shareholder.
 
 
 4
 Athena lacked financial strength from its inception. By June 30, 1987, it had accumulated a $648,848 deficit and a negative net worth. In September of 1988, Brinkley Co. extended Athena an unsecured loan and obtained a $100,000 demand note in return. At the end of the following fiscal year, Athena's net worth was minus $799,588 and its financial position continued to erode throughout the following year as well.
 
 
 5
 By September of 1989, Athena had lost seven of its nine clients. Hanson Industries ("Hanson") and Nazareth Family Center ("Nazareth") were its only remaining clients. On October 3, 1989, Peter Brinkley resigned and Matteucci resumed the role of president. On October 12, Brinkley Co. demanded payment on its $100,000 note. As payment was not forthcoming, Brinkley Co. brought the instant action against Athena in the United States District Court for the District of Massachusetts. Shortly thereafter, Peter Brinkley resigned as a director of Athena.
 
 
 6
 On December 9, 1989, one Frank Griswold, a business acquaintance of Matteucci, executed Articles of Incorporation establishing Charles River Management Company, Inc. ("Charles River"), a new investment management services company. At the time, Griswold and Matteucci understood that Matteucci would not be listed as a Charles River stockholder or incorporator, but that he would become its majority shareholder on May 1, 1990.[2]
 
 
 7
 In November of 1989, Looney & Grossman undertook Athena's representation in the Brinkley Co. action.[3] After extensive consultation, Matteucci instructed Looney & Grossman not to defend the Brinkley Co. action against Athena on the $100,000 demand note. As a result, in due course default judgment was entered against Athena.
 
 
 8
 On November 15, 1989, Matteucci presented two alternative proposals to Athena's board of directors. Under the first proposal, Athena would be dissolved; the second called for its complete recapitalization. Neither proposal was adopted and Athena's financial position continued to worsen, so that by November 30, 1989, it had a $969,176 negative net worth. By the end of calendar year 1989, it had lost an additional $142,036.
 
 
 9
 On December 12, Athena was informed that Hanson, by far the larger of Athena's two remaining clients, would reduce its fee payments to Athena by 60% as of January 1, 1990, and that no additional funds would be invested in Hanson's short-term pension fund account with Athena. These actions by Hanson would reduce Athena's projected gross income for the ensuing year by thirty- seven percent.
 
 
 10
 Matteucci promptly called a stockholders' meeting for January 3, 1990, to consider Athena's dissolution. The notice discussed Athena's unmanageable debt and concluded as follows:
 
 
 11
 even if all the liabilities were forgiven, it would still be impossible to continue since Hanson Industries (our only major account), which has been extremely generous to Athena, has reduced our fees by 60% on the larger of the two accounts that we manage for it. As a result, we are unable, even on a minimum basis, to meet the obligations of rent, telephone, and salaries which are necessary to keep Athena's doors open.
 
 
 12
 With seven-eighths of Athena's outstanding shares represented, shareholders unanimously voted to liquidate. On learning of the liquidation, the two remaining Athena clients ---- Hanson and Nazareth ---- immediately terminated their investment contracts. Matteucci arranged a sale of Athena's fixtures to Charles River, and resigned from all offices with Athena.
 
 
 13
 On February 1, 1990, as previously arranged, Matteucci joined Charles River. Shortly thereafter, and on their own initiative, Hanson and Nazareth transferred their accounts to Charles River. In May, as planned, Matteucci became the majority stockholder in Charles River. Approximately one year later, Looney & Grossman was retained to represent Charles River.
 
 II
 ANALYSIS
 A. The Looney & Grossman Defendants[4]
 
 14
 As a judgment creditor, Brinkley Co. seeks to reach and apply Athena's putative cause of action for legal malpractice against the Looney & Grossman defendants. See Mass. Gen. L. ch. 214, Sec. 3(7) (permitting certain causes of action to be reached and applied); Bethlehem Fabricators, Inc. v. H.D. Watts Co., 190 N.E. 828, 833 (Mass. 1934) ("a cause of action which is not assignable cannot be reached and applied under [Mass. Gen. L. ch. 214, Sec. 3(7) ]"). There is no clear statement of Massachusetts law on whether such a cause of action may be reached and applied, and the decisions in other jurisdictions are mixed. The majority view is that a legal malpractice claim cannot be assigned. See Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves, 709 F. Supp. 44, 50 n.7 (D. Conn. 1989) (collecting cases), aff'd, 929 F.2d 103 (2d Cir. 1991). We bypass this unsettled question of Massachusetts law, because, as the district court correctly noted, Athena would have had no viable malpractice claim against the Looney & Grossman defendants in any event.
 
 
 15
 Brinkley Co. asserts that Athena had three bases for asserting a malpractice claim. First, the Looney & Grossman defendants failed to contest the action Brinkley Co. brought against Athena. Second, during 1990 certain Looney & Grossman defendants allegedly engaged in dual representation of Charles River and Athena. Third, the Looney & Grossman defendants allegedly failed to provide Athena's creditors with the required bulk transfer notice under Mass. Gen. L. ch. 106, Sec. 6-102, in connection with the sale of Athena's tangible assets. We briefly address each contention in turn.
 
 
 16
 First, it is undisputed that Looney & Grossman was instructed by Athena not to answer the Brinkley Co. complaint. See Fleet Nat'l Bank v. Anchor Media Television, Inc., 45 F.3d 546, 558 (1st Cir. 1995) (party may not resort to intentional self-contradiction to obtain unfair advantage). Second, there is no record evidence whatsoever that any Looney & Grossman defendant simultaneously represented Athena and Charles River. Third, the Massachusetts bulk transfer law expressly applies only to "those whose principal business is the sale of merchandise from stock." Mass. Gen. L. ch. 106, Sec. 6-102(3). Athena sold no merchandise from stock, hence was not subject to the bulk transfer notice requirement.[5]
 
 
 17
 Summary judgment on Brinkley Co.'s civil conspiracy claim was appropriate as well. It is essential to a civil conspiracy claim under Massachusetts law that the alleged conspirators have intended harm to the plaintiff. Robitaille v. Morse, 186 N.E. 78, 80 (Mass. 1933). Brinkley Co. proffered no such evidence.
 
 B. Matteucci
 
 18
 Brinkley Co. alleges a breach of the fiduciary duty Matteucci owed as an officer of Athena. The district court ruled that Matteucci owed no fiduciary duty, since the corporate existence of Athena had been terminated before Matteucci first discussed with Griswold his plans to move over to Charles River with Athena's last two clients, Hanson and Nazareth.[6]
 
 
 19
 Brinkley Co. contends on appeal that the district court disregarded evidence that Matteucci breached his fiduciary duty to Athena by arranging for the incorporation of Charles River prior to the dissolution vote on Athena. It points to an affidavit by an Athena shareholder, stating that he would have opposed dissolution had he known of Matteucci's plans.
 
 
 20
 A corporate officer owes a fiduciary duty, Wartski v. Bedford, 926 F.2d 11, 13 (1st Cir. 1991) (applying Massachusetts law), to accord "the utmost good faith and loyalty" to the corporation. Meehan v. Shaughnessy, 535 N.E.2d 1255, 1263 (Mass. 1989) (citations omitted). Yet this fiduciary duty is not breached simply by "secretly setting up a new firm during [the fiduciary's] tenure ... 'provided that in the course of such arrangements [the fiduciary] do[es] not otherwise act in violation of [his] fiduciary duties.' " Id. at 1264 (quoting Chelsea Indus. v. Gaffney, 449 N.E.2d 320, 326 (Mass. 1983)). Rather, the corporate officer's duty is to refrain from "actively competing with his employer during the tenure of his employment." Chelsea Indus., 449 N.E.2d at 326.
 
 
 21
 The scope of a corporate officer's duty not to compete was outlined in Meehan, where law partners in Parker, Coulter, Dailey & White ("Parker Coulter") planned and structured a competing law firm while still partners in Parker Coulter. Meehan, 535 N.E.2d at 1257-59. The SJC nonetheless held that there had been no breach of their fiduciary duty. Id. at 1264. The SJC further held that the fact that the defendant partners had induced Parker Coulter employees to join the breakaway firm did not suffice to establish liability in the absence of "specific losses resulting from this claimed breach." Id. at 1264 n.4. At the same time, the SJC held that the defendant partners' secret solicitation of Parker Coulter's clients was an actionable breach of their fiduciary duty. Id. at 1265. The latter showing was not made in the instant case.
 
 
 22
 There is no record evidence that Matteucci informed either Hanson or Nazareth of the impending move to Charles River until after Athena had been dissolved and Matteucci was no longer in its employ. Moreover, there is not a scintilla of evidence supporting Brinkley Co.'s allegation that Athena might yet have been transformed into a viable concern. On the contrary, Athena's debt exceeded its assets by almost a million dollars and it had sustained serious operating losses during its last three fiscal years. Due to the projected decline in gross income resulting from Hanson's announced cutbacks, Athena's future prospects were grim to say the least. Thus, Athena's vote of dissolution and Matteucci's resignation were anything but the untoward developments posited by Brinkley Co.
 
 
 23
 Accordingly, the district court judgment is affirmed. Double costs are awarded to the Looney & Grossman defendants only, pursuant to Fed. R. App. P. 38.
 
 
 
 [1]
 We relate the evidence in the light most favorable to Brinkley Co., the party resisting summary judgment. Simon v. FDIC, 48 F.3d 53, 56 (1st Cir. 1995)
 
 
 [2]
 Matteucci's brief incorrectly asserts that there is no evidence that he planned to join Charles River. See Matteucci Brief at n.13. In a letter dated May 30, 1991, Matteucci informed Nazareth that "[d]ue to a prearranged agreement in place with Frank [Griswold] at the time of incorporation, I became the majority shareholder of Charles River Management on May 1, 1990."
 
 
 [3]
 Brinkley Co. contends that Looney & Grossman became involved during the fall of 1988. But though the record reflects that Looney & Grossman billed Matteucci personally for legal services during that time period, Brinkley Co. points to no evidence that this representation had anything to do with Athena
 
 
 [4]
 We review the summary judgment ruling de novo to determine whether the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " Simon, 48 F.3d at 56 (citations omitted). The parties agree that the substantive law of Massachusetts governs all claims
 
 
 [5]
 Since the chapter 93A claim brought by Brinkley Co., see Mass. Gen. L. ch. 93A, Sec. 2 (unfair business practices), is based on the same allegations as the Brinkley Co. malpractice claim, it too fails
 
 
 [6]
 The corporate opportunity doctrine, on which the district court rested its ruling, allows a fiduciary to take advantage of a business opportunity of which the principal cannot avail itself. However, "the corporate opportunity doctrine is a rule of disclosure," Wartski v. Bedford, 926 F.2d 11, 19 (1st Cir. 1991) (quoting In re Tufts Elecs., Inc., 746 F.2d 915, 917 (1st Cir. 1984)), which requires "a full and honest disclosure of all relevant circumstances to permit a disinterested decision maker to exercise its informed judgment." Id. (quoting Dynan v. Fritz, 508 N.E.2d 1371, 1378 (Mass. 1987)). There is strong record evidence that Matteucci failed to comply with this duty. Consequently, we do not rely on the corporate opportunity doctrine. See Simon, 48 F.3d at 57 n.1 (court of appeals may affirm "on any ground supported in the record even if the issue was not pleaded, tried or otherwise referred to in the proceeding below.") (citations omitted)