USCA1 Opinion

 

 July 19, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1754 FLORENCE NIGHTINGALE NURSING SERVICES, INC., Plaintiff, Appellant, v. PAUL REVERE LIFE INSURANCE COMPANY, Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________  ____________________ Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ William J. McLeod for appellant. _________________ David A. Talman, with whom Phillips, Silver, Talman & Aframe was ________________ _________________________________ on brief for appellee.  ____________________  ____________________ Per Curiam. Plaintiff Florence Nightingale Nursing Per Curiam. ___________ Services, Inc. ("Nightingale") appeals from a district court judgment summarily disallowing its claim for benefits under an Employee Retirement Income Security Act ("ERISA") health and welfare plan ("Plan") issued by defendant Paul Revere Life Insurance Co. ("Revere"). As summary judgment was proper, we affirm.  I I BACKGROUND BACKGROUND __________ On May 15, 1989, James Thoumes, M.D., notified Revere that its insured, Herbert Striesfield, would require "Private Duty Licensed nursing care for . . . Acquired Immune Deficiency Syndrome." Doctor Thoumes explicitly informed Revere that it was "medically necessary" that Striesfield receive "a minimum of 12 hours daily [nursing] care at his home," in administering medica- tions and safeguarding him from injury which might result from his unsteady gait and poor balance.  Nightingale provided the prescribed nursing services after obtaining a valid assignment of Striesfield's Revere Plan benefits and after requesting Revere to verify the substance of a telephone conversation in which, according to Nightingale, Revere had  confirmed and authorized the following bene- fits, coverage and payment to [Nightingale] . . . for Herbert Striesfield's nursing care: (1) Unlimited skilled nursing care. (2) Payment to [Nightingale] for nurs- 2 ing care provided upon receipt of our invoice will be paid at 100% for fees incurred. [Nightingale] understand[s] that [its] in- voice must be attached to a physician[']s Letter of Medical Necessity ordering the nursing care required and nursing documenta- tion. The record contains no response from Revere. Later, Nightingale asked Revere to confirm another telephone conversation in which, according to Nightingale, a responsible Revere employee had "stated that [Revere] would pay for C.N.A.s [i.e., certified nurses aides]." Nightingale re- quested a response within five days in the event there were any discrepancies between its letter and Revere's understanding as to the substance of the putative telephone conversation. The record contains no response from Revere. Under the heading "What We Do Not Pay," the relevant Plan language provided:  16. Any service, supply or treatment con- nected with custodial care. We do not pay for these services or supplies no matter who provides, prescribes, recommends or performs them. Custodial care means service designed to help family members meet the needs of daily living whether they are disabled or not. These services include help in: a. walking or getting in and out of bed; b. personal care such as bathing, dressing, eating or preparing spe- cial diets; or c. taking medications which the family member would normally be able to take without help. 3 4 The summary judgment record discloses that the nursing services provided by Nightingale included: feeding Striesfield, monitor- ing his diet, making him comfortable, moving his extremities to improve muscle tone, massage, and assisting him to and from the bathroom. Early on, Revere disbursed $3,250.00 in Plan benefits to Nightingale. Thereafter, however, in reliance on the "custo- dial care" exclusion, supra at p. 3, Revere denied all further _____ claims based on Nightingale's nursing services to Striesfield.  Nightingale eventually brought suit in the United States District Court for the District of Massachusetts. After the case was referred to a magistrate judge, see 28 U.S.C.  ___ 636(b)(1)(B) (1995), Revere moved for summary judgment based on the "custodial care" exclusion. Nightingale filed its cross- motion for summary judgment and an opposition to Revere's summary judgment motion, asserting that the "custodial care" exclusion was "vague and ambiguous" and that Revere's oral representations to Nightingale estopped Revere from denying coverage.  The magistrate judge recommended summary judgment for Revere on the grounds that coverage was plainly foreclosed by the "custodial care" exclusion and that Nightingale's estoppel claim was not cognizable because the alleged oral representation or informal writing upon which it relied could not be used to modify the unambiguous terms of the Plan. Nightingale filed timely objection to the magistrate-judge's report and recommendation. In due course, the district court adopted the report and recom- 5 mendation and Nightingale appealed. II II DISCUSSION DISCUSSION __________ A. Standard of Review A. Standard of Review __________________ Summary judgment rulings are reviewed de novo to __ ____ determine whether the pleadings, depositions, answers to inter- rogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Simon v. FDIC, 48 F.3d 53, 56 (1st Cir. 1995). The evidence is _____ ____ reviewed in the light most favorable to the party resisting summary judgment. Id. ___ B. Plan Benefits B. Plan Benefits _____________ "[A] denial of benefits challenged under [29 U.S.C.]  1132(a)(1)(B) is to be reviewed under a de novo standard unless __ ____ the benefit plan gives the administrator or fiduciary discretion- ary authority to determine eligibility for benefits or to con- strue the terms of the plan." Firestone Tire and Rubber Co. v. ______________________________ Bruch, 489 U.S. 101, 115 (1989). As the Revere Plan vests no _____ such discretion in the Plan administrator or fiduciary, we conduct plenary review.  1. "Private Duty Nursing" 1. "Private Duty Nursing" ____________________ The Plan provides that "reasonable and customary charges" shall be covered for "[m]edically necessary private duty nursing ordered by the attending doctor to be provided by a licensed registered or licensed practical nurse." Although the 6 Plan does not define the term, Nightingale argues on appeal that a genuine issue of material fact exists as to whether the servic- es provided Striesfield constituted "private duty nursing."  This argument was asserted for the first time in Nightingale's objection to the magistrate-judge's report and recommendation. It was accompanied by evidence purporting to show that the nursing services provided to Striesfield "included" services which a reasonable factfinder could consider "private duty nursing." As a general rule, parties are not entitled to plenary review of arguments never raised before the magistrate judge designated to hear and report on dispositive motions pursuant to 28 U.S.C. 636(b)(1)(B). Paterson-Leitch Co., Inc. __________________________ v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 _______________________________________ (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge __ ____ of an argument never seasonably raised before the magistrate."). Although the district court did not explicitly rule upon the belated argument relating to the meaning of the term "private duty nursing," we find no abuse of discretion. See id. at 991 ___ ___ (finding no abuse of discretion in district court's decision to deny "another nibble at this particular apple" where party failed to present its claim to magistrate judge in first instance). In all events, however, the sole evidentiary underpin- ning for the unpreserved argument advanced on appeal is an affidavit reviewing the patient file Nightingale maintained on Striesfield. The affidavit does not specify the types of nursing 7 services provided by Nightingale, nor otherwise reveal which nursing services, if any, might constitute covered "private duty nursing." The burden of producing competent evidence sufficient to demonstrate a trialworthy issue as to whether the particular services rendered were covered within the "private duty nursing" provision lay with Nightingale. See McCarthy v. Northwest ___ ________ _________ Airlines, Inc., No. 94-2282, slip op. at 2 (1st Cir. May 31, ______________ 1995) (party resisting summary judgment on issue as to which it bears ultimate burden of proof "must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. _______ _______________ 1990) (same). As the Nightingale affidavit failed its mission even assuming timeliness, there is no reason to suppose further indulgence would bear fruit. See Paterson-Leitch, 840 F.2d at ___ _______________ 991. 2. "Custodial Care" Exclusion 2. "Custodial Care" Exclusion _________________________ The Plan defines "custodial care" as: service designed to help family members meet the needs of daily living whether they are disabled or not[, including:]  a. walking or getting in and out of bed; b. personal care such as bathing, dressing, eating or preparing spe- cial diets; or c. taking medication which the family member would normally be able to take without help. The evidence presented before the magistrate judge established that the nursing services provided by Nightingale came squarely 8 within the "custodial care" exclusion: preparation of special diet, feeding, performing foot massages, "active and passive Range of Motion exercises," and assisting the patient to and from the bathroom. Thus, there was no error.1 C. Equitable Estoppel C. Equitable Estoppel __________________ Nightingale contends that Revere is equitably estopped from denying benefits under the "custodial care" exclusion because these nursing services were provided to Striesfield in reliance on Revere's contrary oral representations. But since Nightingale has not demonstrated an ambiguity in the language of _________ the "custodial care" exclusion, the putative oral representations it attributes to Revere were offered to modify, not merely to ___ interpret, the ERISA Plan language. Thus, its equitable estoppel claim cannot succeed. Law v. Ernst & Young, 956 F.2d 364, 370-72 ___ _____________ (1st Cir. 1992); Kane v. Aetna Life Ins., 893 F.2d 1283, 1285-86 ____ _______________ (11th Cir.), cert. denied, 498 U.S. 890 (1990). See Schoonmaker _____ ______ ___ ___________ v. Employee Sav. Plan of Amoco Corp., 987 F.2d 410, 412 (7th Cir. _________________________________ 1993) (oral representations or "other informal statements" may not be used to contradict terms of ERISA plan); Greany v. Western ______ _______ Farm Bureau Life Ins. Co., 973 F.2d 812, 822 (9th Cir. 1992) ___________________________ (same); Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 59 (4th _______ ________________________ Cir. 1992) (same), cert. denied, 113 S. Ct. 1051 (1993); Degan v. _____ ______ _____  ____________________ 1Nor would the untimely Nightingale affidavit have altered the "custodial care" exclusion ruling. The affidavit does not state whether the listed services were among those previously reimbursed by Revere in the amount of $3,250, nor does it reflect the dollar amount claimed for the services purportedly qualifying as "private duty nursing."  9 Ford Motor Co., 869 F.2d 889, 895 (5th Cir. 1989) (same); see _______________ ___ also Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1164 (3d ____ ______ ________________________ Cir. 1990) (ERISA plan not subject to amendment by informal communication between employer and plan beneficiary); Moore v. _____ Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988) ____________________________ (similar); Musto v. American Gen. Corp., 861 F.2d 897, 910 (6th _____ ____________________ Cir. 1988) (clear terms of written employee benefit plan not to be modified or superseded by "oral undertakings" on part of employer), cert. denied, 490 U.S. 1020 (1989).  _____ ______ D. Evidentiary Claims  D. Evidentiary Claims __________________ Nightingale appeals various evidentiary rulings by the magistrate judge. We discuss only the challenged rulings admit- ting in evidence the essential documentary exhibits proffered by Revere, consisting of the Plan document and the medical records Nightingale submitted to Revere. Nightingale contends that the Plan document itself is inadmissible hearsay. See Fed. R. Evid. 802. We need not ___ address Revere's response that the Plan document comes within the "business records exception" to the hearsay rule, see Fed. R. ___ Evid. 803(6), since the Plan document itself is not hearsay. See ___ Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, ___________________ __________________________ 540 (5th Cir.) ("Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal signif- icance, and are nonhearsay.") (quoting Thomas A. Mauet, Fundamen- _________ tals of Trial Techniques 180 (1988)), cert. denied, 115 S. Ct. 82 ________________________ _____ ______ (1994). Rather, the Plan constitutes a form of verbal act by 10 Revere and Striesfield's employer. Mueller v. Abdnor, 972 F.2d _______ ______ 931, 937 (8th Cir. 1992); see also Kepner-Tregoe, 12 F.3d at 540; ___ ____ _____________ 2 John W. Strong et al., McCormick on Evidence 249, at 101 (4th _____________________ ed. 1992). The Federal Rules of Evidence explicitly "exclude from hearsay the entire category of `verbal acts' and `verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801(c) advisory commit- tee's note.  At no time has Nightingale suggested that the Plan document admitted in evidence is not the document executed by ___ Striesfield's employer and Revere. Instead, Nightingale has focused on the lack of personal knowledge on the part of the affiant who attested that a copy of the Plan document was at- tached to the affidavit. Insofar as this represented an attempt to assert that the Plan document was not duly authenticated, it fails to assert a basis for questioning the affiant's statement that the attached document is a copy of the Plan.  Nightingale likewise objects to the Nightingale medical ___________ records Revere introduced to support its contention that the nursing services provided by Nightingale were custodial in _________ nature. As a practical matter, of course, this is an argument Nightingale cannot afford to win. If Nightingale's own nursing services records were inadmissible, there would appear to be no need for Revere to justify its disallowance of Nightingale's claims under the Plan. In all events, however, the nursing 11 records Nightingale submitted to Revere constituted admissions of ___________ _________ a party opponent, not hearsay, see Fed. R. Evid. 801(d)(2); see ___ ___ ___ also United States v. Paulino, 13 F.3d 20, 24 (1st Cir. 1994) ____ _____________ _______ (finding money order receipt an adoptive admission tending to prove appellant financed apartment used for drug distribution, where receipt was found in appellant's possession, bearing appellant's name and address, and labeled "May rent"). There was no abuse of discretion in denying Nightingale's motion to strike the nursing records.  Affirmed. Affirmed. ________ 12