# United States Court of Appeals
## For the First Circuit

No. 12-1887

ELADIO ACOSTA-RAMÍREZ ET AL.,

Plaintiffs, Appellants,

v.

BANCO POPULAR DE PUERTO RICO,

Defendant, Appellee,

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of Westernbank Puerto Rico,

Intervenor Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Héctor E. Pedrosa-Luna, for appellants.
Enrique R. Padró Rodríguez, with whom Pedro J. Manzano Yates
and Fiddler González & Rodríguez, PSC were on brief, for appellee
Banco Popular de Puerto Rico.
Kathleen V. Gunning, Counsel, with whom Kathryn R. Norcross,
Acting Assistant General Counsel, Lawrence H. Richmond, Senior
Counsel, Ana B. Rosado-Frontanes, and Schuster Aguilo LLP were on
brief, for appellee Federal Deposit Insurance Corporation.

April 3, 2013

**LYNCH, Chief Judge**. Former employees of Westernbank, a failed bank taken into receivership by the Federal Deposit Insurance Corporation ("FDIC"), sued Banco Popular de Puerto Rico ("BPPR"), a bank that subsequently acquired Westernbank's deposits and certain assets, but not the FDIC, on claims for severance pay under Law 80, P.R. Laws Ann. tit. 29, § 185a et seq. The FDIC has intervened and asserted that under 12 U.S.C. § 1821(d)(13)(D) "no court shall have jurisdiction over" the claims because the plaintiffs either failed to file administrative claims with the FDIC or failed to challenge in federal court the FDIC's disallowance of their administrative claims. At oral argument, the plaintiffs' counsel conceded that the FDIC's position is correct. Because the case must be remanded for dismissal for lack of subject-matter jurisdiction, the issues presented are likely to recur, and an opinion will provide useful precedent, we explain why there was no jurisdiction here.

This case raises several issues of first impression for us under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183. We hold that the plaintiffs' failures to comply with the FDIC administrative claims process trigger the statutory bar, and we join a number of circuits in holding that they may not avoid the jurisdictional bar by failing to name the FDIC as a defendant. Accordingly, we vacate entry of summary judgment for the defendants

-3-

and remand with instructions to dismiss for lack of subject-matter jurisdiction.

I.

A.        Factual Background

On April 30, 2010, the Puerto Rico Office of the Commissioner for Financial Institutions ("OCFI") closed the insolvent Westernbank and appointed the FDIC as receiver. That same day, the FDIC informed all Westernbank employees that they had been terminated because Westernbank was permanently closed. The FDIC notified the employees that they had a right to submit any claims that they may have had against Westernbank or the FDIC to the FDIC under the mandatory administrative claims process, 12 U.S.C. § 1821(d)(3)-(13), established by FIRREA. The plaintiffs neither pled nor produced evidence that they filed any such claims. All seventy-six plaintiffs worked for Westernbank at the time of its closure, with start dates ranging from 1978 to 2005.

The FDIC sold Westernbank's deposits and loans under a Purchase and Assumption Agreement ("P&A Agreement") to BPPR on April 30, 2010.[1]  In the P&A Agreement, BPPR agreed to assume all

_____

[1] We have explained before that:
Although there are many options available to the FDIC when a bank fails, these options generally fall within two categories of approaches, either liquidation or purchase and assumption. The liquidation option is the easiest method, but carries with it two major disadvantages. First, the closing of the bank weakens confidence in the banking system. Second, there is often substantial delay in returning funds to depositors. The

-4-

of the failed bank's insured deposits and to purchase certain assets formerly held by Westernbank. BPPR did not assume any liability to Westernbank employees for severance pay, and sections 12.1(a)(3) and (4) of the P&A Agreement provided that the FDIC would indemnify BPPR for liabilities of the failed bank not assumed under the P&A Agreement, including claims based on the rights of or actions/inactions of an employee of the failed bank. The P&A Agreement specifically contemplated claims being brought by former employees under Law 80 for severance or enhanced severance pay, and provided that the FDIC would indemnify BPPR for any employee claim under Law 80 based on successor liability.

Many of the plaintiffs in this case became employees of BPPR. Between April 30 and June 17, 2010, these plaintiffs signed temporary employment agreements with BPPR[2] containing termination dates and acknowledgments by the plaintiffs that: their employment relationship with Westernbank had ended; Westernbank had ceased to exist; and their temporary employment with BPPR was new and did not

---

preferred option when a bank fails, therefore, is the purchase and assumption option. . . . Generally, the purchase and assumption must be executed in great haste, often overnight.
Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 48 (1st Cir. 1991) (per curiam) (citations omitted).

[2] Plaintiffs José Pérez-Valentín and Arnaldo González-González never became employees of BPPR. One plaintiff, Fernando Cruz-González, became a regular employee of BPPR, but was terminated on August 13, 2010, because of disrespectful behavior toward a trainer during his new employee training in violation of BPPR's Employee Manual.

constitute a continuation of their prior employment with Westernbank. Of the plaintiffs who had become BPPR employees, all eventually left BPPR, either through voluntary resignations or termination.

B.       Procedural History

The plaintiffs sued BPPR on October 18, 2010 in a Puerto Rico court for unjust termination in violation of Law 80 and sought severance payments based on their time employed at BPPR and at Westernbank.[3]  The employees asserted that BPPR was liable as a successor employer because BPPR acquired the assets of Westernbank, an ongoing business, and essentially continued the same identity and business activity as before.

On November 19, 2010, BPPR removed the case to federal court based on federal question jurisdiction[4] and the FDIC moved to intervene on February 14, 2011, because it retained certain liabilities at issue (if any actually existed). The district court granted the motion to intervene on April 15, 2011.

BPPR moved for summary judgment on August 26, 2011, arguing that it was not liable for any severance claims based on the plaintiffs' employment at Westernbank for at least three

_____

[3] On November 18, 2010, the number of plaintiffs reached the current number of seventy-six when the employees filed an amended complaint.

[4] Because we determine that this case should in all events have been dismissed for want of subject-matter jurisdiction, we take no view as to the propriety of removal.

-6-

different merits-based reasons, which are not pertinent to our disposition of this appeal.

The FDIC moved for dismissal on the ground that the court lacked subject-matter jurisdiction to decide the plaintiffs' claims for severance pay based on their employment at Westernbank. Fed. R. Civ. P. 12(b)(1).[5] The FDIC argued that it had retained any potential liability for such severance claims in the P&A Agreement. The employees had been terminated on the closing date and notified of their right to file a claim against the FDIC. The FDIC provided unrebutted information that some did not file any such claim, and those who did failed to file any challenge (let alone timely) to the FDIC's disallowance of their claims in the proper federal court. As a result, the FDIC argued that the court lacked jurisdiction to hear the claims.

The district court granted BPPR's motion for summary judgment on March 30, 2012, based on BPPR's arguments,[6] and did not

---

[5] The FDIC also moved to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that the plaintiffs' employment at Westernbank was terminated for "just cause" because of Westernbank's insolvency, and thus they had no claim for relief under Law 80.

[6] The court held on the merits that BPPR was not a successor employer, that Westernbank's closure provided just cause for the plaintiffs' termination, that any liability for severance claims related to the plaintiffs' employment at Westernbank remained with the FDIC under the terms of the P&A Agreement, and that BPPR was not liable for severance pay to the plaintiffs for the time they worked for BPPR because they worked under fixed-term contracts to perform a temporary job. Acosta-Ramirez v. Banco Popular de P.R., Civil No. 10-2131CCC, 2012 WL 1123602, at *8-10 (D.P.R. Mar. 30,

address the antecedent question of whether it had jurisdiction. Acosta-Ramirez v. Banco Popular de P.R., Civil No. 10-2131CCC, 2012 WL 1123602, at *11 (D.P.R. Mar. 30, 2012). The plaintiffs filed a timely notice of appeal. On appeal, they have expressly abandoned any claims against BPPR that do not depend on their Westernbank tenure.

II.

Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case. Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998)); see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (discussing importance of determining if an issue is one of subject-matter jurisdiction because it creates an independent obligation for the court, allows courts to resolve disputed evidence, and requires dismissal of the complaint in its entirety if subject-matter jurisdiction is lacking). We independently determine the existence of subject-matter jurisdiction. See Alphas Co. v. Dan Tudor & Sons Sales, Inc., 679 F.3d 35, 38 (1st Cir. 2012); Nat'l Union Fire Ins. Co. of Pittsburgh v. City Sav., F.S.B., 28 F.3d 376, 383 (3d Cir. 1994)

_____

2012). The district court noted that Cruz was not a temporary employee, but became a regular employee. However, the district court found his termination to be for good cause. Id. at *10-11.

-8-

(appeals courts exercise plenary review over question of whether subject-matter jurisdiction exists).  In deciding the question, we may consider whatever evidence has been submitted in the case.  See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); see also Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).

A.        The FDIC Assumed and Retained Severance Liability for The Plaintiffs' Tenure at Westernbank

Congress adopted FIRREA in response to the savings and loan crisis in the 1980s.  Tellado v. IndyMac Mortg. Servs., 707 F.3d 275, 279 (3d Cir. 2013).  FIRREA gives the FDIC authority to act as receiver or conservator for failed institutions.  Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1211 (9th Cir. 2012).  "Congress wanted to facilitate takeovers of insolvent financial institutions and smooth the modalities by which rehabilitation might be accomplished."  Marquis v. FDIC, 965 F.2d 1148, 1154 (1st Cir. 1992).

As part of the rehabilitative process, the FDIC, as receiver, succeeds as a matter of law to the rights, titles, powers and privileges of the failed bank, along with the responsibility to pay the failed bank's valid obligations.  12 U.S.C. § 1821(d)(2)(A), (d)(2)(H).  The FDIC may merge the failed institution with a healthier institution, and in doing so, may transfer "any asset or liability" of the failed institution.  Id. § 1821(d)(2)(G)(i)(I)-(II).  Through a different non-FIRREA

statutory provision, Congress permits the FDIC "in its sole discretion and upon such terms and conditions as the [FDIC] may prescribe," to assume liabilities of the failed institution.  Id. § 1823(c)(2)(A)(i).

Here, the FDIC, through the P&A Agreement, retained liabilities as to any claims by former Westernbank employees arising from their employment with Westernbank, which the FDIC assumed by becoming receiver.  See Lawson v. FDIC, 3 F.3d 11, 16 (1st Cir. 1993); Payne v. Sec. Sav. & Loan Ass'n, F.A., 924 F.2d 109, 111-12 (7th Cir. 1991).  Article IV of the P&A Agreement sets forth the liabilities assumed by BPPR, and does not include liabilities under Law 80.  Moreover, subject to limitations not relevant here, section 12.1 of the P&A Agreement indemnifies BPPR against liabilities it did not assume through the P&A Agreement, including claims based on rights of employees of Westernbank.  In addition, section 12.9 of the P&A Agreement specifically contemplates a claim of successor liability against BPPR by former Westernbank employees and indemnifies BPPR against such claims, providing more proof that BPPR did not assume such liability. Hence, any claim for severance pay for the plaintiffs' tenure at Westernbank is ultimately against the FDIC.

B.  The Plaintiffs' Failures to Comply with FIRREA's Administrative Claims Process Create a Jurisdictional Bar

Because Congress wanted the FDIC to be able to deal expeditiously with failed depository institutions, see Meliezer v. Resolution Trust Co., 952 F.2d 879, 881 (5th Cir. 1992), FIRREA was also "designed to create an efficient administrative protocol for processing claims against failed banks," Marquis, 965 F.2d at 1154. This was achieved through the statutory claims process.

FIRREA's statutory claims process requires the FDIC, upon appointment as receiver, to publish notice that the failed institution's creditors must file claims with the FDIC by a specified date, which must be at least ninety days after publication of the notice.  12 U.S.C. § 1821(d)(3)(B)(i).[7]  If a claim is filed, the FDIC has 180 days to determine whether to approve or disallow the claim.  Id. § 1821(d)(5)(A)(i).  Claimants then have sixty days from the date of disallowance or from the expiration of the 180-day administrative decision deadline to seek judicial review in an appropriate federal district court (or to seek administrative review).  Id. § 1821(d)(6)(A).[8]

---

[7] Notice must also be mailed to all known creditors of the institution.  12 U.S.C. § 1821(d)(3)(C).

[8] Failure to seek administrative review or judicial review within the sixty-day period means any portion of the claim not allowed is deemed disallowed and "such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim."  12 U.S.C. § 1821(d)(6)(B).

Moreover, FIRREA imposes limits on the jurisdiction of courts to hear certain claims where the plaintiff has not complied with the statutory claims process. Section 1821(d)(13)(D) states:

(D) Limitations on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over --

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

"[T]his subsection" refers to § 1821(d) in its entirety. Marquis, 965 F.2d at 1153. As a result, in a case in which subsection (i) applied, we held that "[f]ailure to comply with the [statutory claims process] deprives the courts of subject matter jurisdiction." Simon v. FDIC, 48 F.3d 53, 56 (1st Cir. 1995). The same deprivation of jurisdiction holds true under subsection (ii). We discuss later why failure to name the FDIC as a defendant does not affect this conclusion.

1.    Claims of Those Who Did Not File Administrative Claims Are Barred

The parties asserting jurisdiction, here the plaintiffs, have the burden of demonstrating the existence of federal

-12-

jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Fábrica de Muebles J.J. Álvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 26, 32 (1st Cir. 2012).  Here, it is undisputed that many of the plaintiffs never made any effort to follow the statutory claims process.  These plaintiffs have obviously failed to meet the burden.  See Inversiones Mendoza, 682 F.3d at 32.

    2.    The Plaintiffs Who Filed an Administrative Claim But Did Not Seek Timely Judicial Review Under FIRREA Are Barred

There is another wrinkle based on information in the FDIC's brief, which informs us that many of the plaintiffs actually filed for severance pay with the FDIC following the Westernbank receivership.  Their claims were denied and the plaintiffs never filed suit against the FDIC seeking review of the denials.  The FDIC argues that failure to file suit within the sixty-day requirement of § 1821(d)(6) deprives the court of subject-matter jurisdiction.

A number of courts that have considered the question have held that failure to comply with the sixty-day limit operates as a jurisdictional bar.  See, e.g., Home Capital Collateral, Inc. v. FDIC, 96 F.3d 760, 763-64 (5th Cir. 1996); Astrup v. Resolution Trust Corp., 23 F.3d 1419, 1421 (8th Cir. 1994) (per curiam); Capitol Leasing Co. v. FDIC, 999 F.2d 188, 193 (7th Cir. 1993).  Our decision in Simon v. FDIC, 48 F.3d 53, also appears to place

-13-

the sixty-day requirement within the jurisdictional sweep of § 1821(d)(13)(D), although in that case the plaintiffs never even filed administrative claims.  See 48 F.3d at 56.

We agree with the FDIC that the failure of the plaintiffs to comply with the sixty-day requirement to seek judicial review of the denial of their administrative claims also deprives courts of jurisdiction.  FIRREA's plain language states that except as otherwise provided, no court has jurisdiction over the relevant types of claims, 12 U.S.C. § 1821(d)(13)(D)(i)-(ii), and the only judicial review provided for here is for suits filed within sixty days of the disallowance or the expiration of the decision period, id. § 1821(d)(6).  We think that the provision's plain language makes it clear that Congress wanted the rule to be "jurisdictional," see Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1203 (2011).  Moreover, the sixty-day limit is part of a comprehensive scheme designed to create an efficient process, see Marquis, 965 F.2d at 1154, which buttresses our view that failure to comply with the sixty-day requirement, like failure to file an administrative claim, triggers FIRREA's jurisdictional limitation.

3.    The Plaintiffs May Not Avoid the Jurisdictional Bar by Strategically Naming BPPR as the Sole Defendant

Had this suit been brought originally against the FDIC, it would clearly have been jurisdictionally barred.  See Simon, 48 F.3d at 56.  We consider whether the jurisdictional limitation

applies to suits seeking to make an end run around FIRREA's statutory claims process by suing the third-party purchasing bank. It does.

As the Seventh Circuit summarized in Farnik v. FDIC, 707 F.3d 717 (7th Cir. 2013), the circuits that have considered whether FIRREA's judicial review restriction applies to third-party assuming banks "have interpreted it as focusing on the substance of a claim rather than its form." Id. at 722. Therefore, "the FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing." Id. at 723.

Other circuits agree. In Village of Oakwood v. State Bank & Trust Co., 539 F.3d 373 (6th Cir. 2008), the Sixth Circuit reasoned that even if the FDIC was not the named defendant, the claims related to acts or omissions of the FDIC as receiver and so the failure to comply with the statutory claims process barred the claim. Id. at 386.

In Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, the Ninth Circuit stated, "[l]itigants cannot avoid FIRREA's administrative requirements through strategic pleading." Id. at 1209. The court found the plaintiffs' claims against the purchasing bank related to an act or omission of a depository institution for which the FDIC had been appointed receiver, triggering the jurisdictional bar. Id. at 1215.

Finally, in Tellado v. IndyMac Mortgage Services, 707 F.3d 275, the Third Circuit held that because the plaintiffs' claim against the assuming bank was "not a claim of independent misconduct by [the assuming bank]," but existed "only because [the failed institution] had failed to provide proper notice of the right to cancel [the mortgage]," id. at 280, the jurisdictional limitation applied, id. at 281.

Looking to the substance rather than the form, the plaintiffs' claims are indeed really claims against the receivership. They turn on: (1) the FDIC's decision, as receiver, to terminate the plaintiffs upon the closing of Westernbank; and/or (2) the FDIC's decision, as receiver, not to transfer to BPPR any liability for employees' severance pay based on their employment at Westernbank in the P&A Agreement. The plaintiffs' counsel conceded at oral argument that there are no independent claims against BPPR for actions it took post-receivership. That concession, coupled with our finding that jurisdiction is lacking on the severance claims related to the plaintiffs' employment at Westernbank, disposes of this appeal in its entirety. The plaintiffs may not avoid that reality though strategic pleading. Their claims are jurisdictionally barred.

III.

For the reasons set forth above, we <u>vacate</u> the district court's order granting summary judgment and <u>remand</u> this case with instructions to dismiss for lack of subject-matter jurisdiction. No costs are awarded.